M. R. ZUMWALT, C. W. ZUMWALT, H. J. ZUMWALT and HERMAN H. BUERGLER, as Last Board of Directors and Trustees of Zumwalt Co., a Corporation, Now Dissolved, Plaintiffs-Respondents-Cross-Appellants, v. UTILITIES INSURANCE COMPANY, a Corporation, Defendant-Respondent-Appellant, No. 41732—228 S. W. (2d) 750.

Division Two, March 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, April 10, 1950.

John S. Leahy, John J. Nangle, George Gantner and Roberts P. Elam for Utilities Insurance Company.

364

*Douglas H. Jones, Harry Richards* and *Barak T. Mattingly* for Zumwalt Company; *Mattingly, Boas & Richards* and *Berthold, Jones & Bialson* of counsel.

TIPTON, J.—In the circuit court of the city of St. Louis the plaintiffs filed this action on the grounds of defendant's bad faith and negligence in failing to settle the law suit styled Burneson v. Zumwalt Company within the limits of a $10,000 policy of liability insurance issued by defendant. The plaintiffs also sought to recover attorney's fee and penalties for vexatious delay and punitive damages. The plaintiffs recovered $7,012.77 actual damages, which was the amount and interest they had to pay of the judgment in the Burneson case after it was affirmed by this court. Our opinion is reported in 349 Mo. 94, 159 S. W. 2d 605. The trial court refused to submit the question of attorney's fee, penalties for vexatious delay and punitive damages to the jury, and plaintiffs appealed from that action. The defendant appealed the judgment, awarding the plaintiffs actual damages. We have jurisdiction of this appeal because the amount in dispute in these two appeals is $58,500.

The plaintiffs constitute the last board of directors of the Zumwalt Company, a Missouri corporation, which was dissolved on January 1, 1943. Prior to that time, this company had been engaged in the business of installing garage doors, commonly known as "overhead doors." During the month of August, 1935, the Kirn Sign Company was having erected a garage building in the city of St. Louis. The Zumwalt Company was a sub-contractor for the installation of an overhead door in that building. The door had been installed but the glass had not been put in. It weighed 300 pounds without the glass and 400 pounds with it. The tension on the spring of the door was set for the door ▮ with the glass installed and it was so strong it would permit the door to fly up if not blocked until the glass was put in. While in this condition the door flew up, injuring a Mr. Schuster on the evening of August 28, 1935. This accident was reported to the Zumwalt Company. The next day Mr. Carl Burneson was injured in the same manner. A detailed statement of the facts may be found in our opinion of Burneson v. Zumwalt Company and will not be repeated here.

This latter injury was promptly reported to the defendant who had issued the Zumwalt Company a liability insurance policy which covered these two accidents. Under the policy, the defendant agreed:

"III. To investigate all accidents and claims covered hereunder and to defend in the name and on behalf of the Assured all suits thereon, even if groundless, of which notices are given to the company as hereinafter provided; but the Company reserves the right to settle any such claims or suits.

"IV. To pay all costs taxed against the Assured in any legal proceeding defended by the Company, all premiums on attachment and/or appeal bonds required in any such proceeding, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Company's liability as herein expressed, and all expenses incurred by the Company for investigation, negotiations for settlements, and/or defense of claims or suits; further, to pay the cost of such immediate surgical relief as is imperative at the time of the accident."

Also, the policy provided:

"The Assured shall not voluntarily assume any liability, settle any claim nor incur any expense, except at his own cost, nor interfere in any negotiation, settlement or legal proceeding without the consent of the Company previously given in writing."

On March 20, 1936, Burneson filed an action against the Zumwalt Company to recover damages for the injuries he received when he was hurt by the door in question. Burneson's petition asked $40,000 for these injuries. The defendant took charge of this suit and an investigation was made by its claim department. The trial of the case was turned over to lawyers employed by the defendant, pursuant to the policy of liability insurance issued by the defendant. This policy was limited to $10,000 on account of bodily injury or death suffered by one person, and $20,000 by more than one person, in any accident.

At the first trial one juror went to sleep and the trial judge declared a mistrial. The second trial resulted in a hung jury, and the third trial resulted in a judgment for Burneson in the sum of $15,000. As previously stated, we affirmed that judgment for the full amount of the verdict. The defendant paid $10,000 and interest on the amount of the judgment, and the plaintiffs paid $5,000 of the judgment and interest.

The above facts are not in dispute. But since defendant's first assignment of error is that the trial court erred in refusing to sustain its motion for a directed verdict, we will only state the facts most favorable to plaintiffs' theory of this action.

John Grossman, a lawyer of the St. Louis bar, testified on behalf of plaintiffs. His testimony was that he was the attorney for Burneson

in his damage action against the Zumwalt Company; that after he filed suit in that case he discussed the possibility of a settlement with the manager of the claim department of the defendant; that the manager asked how much he wanted, and he stated $8,500; that the manager stated that defendant was liable for only $5,000 as the second $5,000 was reinsured and the reinsurer would not entertain such a proposition; that they refused to settle; that during the first trial he submitted to the defendant's trial attorney an offer of settlement for $6,500 which he refused, but he did offer $4,500; that he could not accept the $4,500 offer because his client would have to pay back about $2,400 to the compensation insurance carrier; that during the third trial one of his important witnesses was missing and he again offered to settle the case for $6,500, and the trial attorney again offered ▆▆▆ $4,500 for a settlement; that he thought there was a difference between the Burneson case and the Schuster case for the reason that Schuster's injury put the Zumwalt Company on notice of the defective condition of the door; and that injuries Burneson received were in his judgment worth $40,000, the amount he sued for.

Maurice Zumwalt testified that he was president of the Zumwalt Company and a member of its last board of directors; that when suit was filed by Burneson he took the summons to the defendant's claim manager, who said he would take care of it; that he asked the manager and defendant's trial attorney if he should retain an attorney but was informed that one was not necessary, and the trial attorney stated, "We can take care of the case for you"; that he asked the claim manager if there was any chance of settling the case and he said that Mr. Grossman had offered to settle for $8,500; "that I begged him to settle the case," and that he replied, "'We have reinsured $5,000 of your $10,000 policy and we would be willing to make a settlement for $4,500, but we wouldn't pay over that'" since the reinsurance company would not pay anything; that he asked defendant's trial attorney to settle the case and "he also stated the same thing, that the Utilities Insurance Company was willing to pay $4,500, but the reinsurance company would not pay anything, so they would have to go to court with the case, they wouldn't make a settlement"; that during the last trial the defendant's trial lawyer told him the Burneson case could be settled for $7,500 but defendant could "only spend $5,000 in settling the case because the reinsurance company will not pay anything; if you will pay $2,500 of your money, we will settle the case"; and that he told the trial attorney that was very unfair when he could settle it for less than the policy limits, but was told since "you are not willing to pay anything, * * * we will go ahead and try it."

Both the manager of defendant's claim department and its trial attorney denied that they had these conversations. They both testi-

fied that from their investigation and the facts they had before them, they thought the case could be won. Of course, defendant's testimony that contradicted the evidence adduced on behalf of the plaintiffs must be disregarded in ruling defendant's motion for a directed verdict, and we will do so in ruling this assignment of error.

■. This is a case of first impression in this court; however, this question has been ruled upon once by the St. Louis Court of Appeals in the case of McCombs v. Fidelity & Casualty of New York, 231 Mo. App. 1206, 89 S. W. 2d 114, l. c. 121.

After an extensive review of the cases from other states and from the federal courts, that court, in ruling the case, said: "The courts are not in agreement in holding the insurer liable for negligence in refusing to settle, but there is no disagreement with respect to the insurer's liability where bad faith appears."

We have reviewed many authorities on the question and think the weight of authority is that where the insurer in a liability policy reserves the exclusive right to contest or settle any claim brought against the assured, and prohibits him from voluntarily assuming any liability or settling any claims without the insurer's consent except at his own costs, and the provisions of the policy provide that the insurer may compromise or settle such a claim within the policy limits, no action will lie against the insurer for the amount of the judgment recovered against the insured in excess of the policy limits, unless the insurer is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy. There are cases that hold that the insured is entitled to recover upon proof that the insurer in refusing to settle a claim for damages was guilty of negligence. But this test is rejected in the better reasoned cases and we think rightly so. Consult cases discussed in 71 A. L. R. 1484 and 131 A. L. R. 1496.

■ In ruling this assignment of error, the question before us is: Did the defendant act in bad faith in refusing to settle the Burneson case?

■ "Bad faith is, of course, a state of mind, indicated by acts and circumstances, and is provable by circumstantial as well as direct evidence. Johnson v. Hardware Mutual Casualty Co., 108 Vt. 269, 286, 187 A. 788; Sowder v. Lawrence, 129 Kan. 135, 281 P. 921, 923. Each case must stand and be determined upon its particular state of facts." Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, 1 A. 817, l. c. 822. That case held that bad faith on the part of the insurer would be the intentional disregard of the financial interest of insured in the hope of escaping the responsibility imposed upon it by its policy.

In the case of Boling v. New Amsterdam Casualty Co., 173 Okla. 160, 46 P. 2d 916, l. c. 918-919, that court said:

"The appellee [the insurer] then sought to coerce the appellant to assume a major portion of its liability, and this has been held to constitute bad faith. .* * * The insurer must act honestly to effectually indemnify and save the insured harmless as it has contracted to do to the extent, if necessary, that it must make whatever payment and settlement an honest judgment and discretion dictate, within the limits of the policy, and an abandonment of this duty to act subsequent to its assumption in part constituted bad faith. Maryland Cas. Co. v. Cook-O'Brien Const. Co. (C. C. A.) 69 F. (2d) 462; American Mut. Liability Ins. Co. v. Cooper (C. C. A.) 61 F. (2d) 446; Maryland Cas. Co. v. Elmira Coal Co. (C. C. A.) 69 F. (2d) 616; Bartlett v. Travelers' Ins. Co., 117 Conn. 147, 167 A. 180. Contra: Rumford Falls Paper Co. v. Fidelity & Cas. Co., 92 Me. 574, 43 A. 503."

In ruling the McCombs v. Fidelity & Casualty Co. of New York case, supra, S. W. 2d l. c. 122, the St. Louis Court of Appeals said:

"It is difficult to escape the conclusion that the company proceeded on the theory that by the terms of the contract it had the insured tied hand and foot, and thereby sought to coerce the insured into contributing a portion of its own liability in settlement of the suit so as to avoid being compelled to pay a larger sum through a verdict and judgment which every one concerned realized would result from a trial of the suit, unless by chance the insured might win."

In the case at bar, the defendant issued the Zumwalt Company a liability policy where the limit for injury or death of one person was limited to $10,000. The defendant had the second $5,000 of that policy reinsured, so regardless of the size of. the verdict, the defendant could lose only $5,000. Yet there was evidence that the defendant would settle for $4,500 if the Zumwalt Company would pay the balance of the offer of settlement made by Burneson. There was evidence that defendant told Zumwalt that if his company would not pay the amount in excess of $4,500, then they would try the suit. Both offers were within the limits of the policy issued. "As applied to this case, bad faith on the part of the defendant would be the intentional disregard of the financial interests of. the plaintiff in the hope of escaping the full responsibility imposed upon it by its policy." Johnson v. Hardware Mut. Casualty Co., 109 Vt. 481, 1 A. 2d 817, l. c. 820. We think the jury could conclude that the reason defendant did not settle the Burneson suit was because, under no circumstances, would it ever be liable for more than $5,000, and it would prefer to take a gamble on getting a favorable verdict rather than to make a settlement within the limits of the policy. If this was its reason for not accepting Burneson's offers, then it was an intentional disregard of the duty it owed the Zumwalt Company, and, of course, defendant did not act in good faith. The policy holder was not interested in what the reinsurer would do. It had

a right to look to the defendant who had issued the policy to protect its interest. This would be true even if defendant's manager of its claim department and its trial attorney told Zumwalt that they thought they could win the case, because under all the facts and circumstances in the case the jury could find such statement was not made in good faith. Of course, if that was their honest opinion, then that would be a good defense, but that would be a question for the jury.

We conclude from all the facts in this record that the jury would be justified in holding the defendant did not act in good faith in failing to settle the Burneson case within the limits of the policy they issued the Zumwalt Company, and the trial court properly overruled defendant's motion for a directed verdict.

The defendant's next assignment of error is that the trial court erred in giving instruction No. 1 on behalf of plaintiffs. This instruction directed a verdict for plaintiffs if the jury found certain facts. The contention of defendant, as made in its brief, is that this instruction told the jury "if Burneson made an offer to settle his case against Zumwalt Company for any sum within the limits of defendant's policy covering the Zumwalt Company, and if defendant declined to settle for such sum, defendant was liable for any excess of a judgment in favor of Burneson over the policy limits—that is to say, that defendant was duty bound to settle Burneson's case within its policy limits, if it had any opportunity to do so." Plaintiffs' instruction is not susceptible to any such strained construction as contended by defendant. The instruction required the jury to find that defendant failed to act in good faith in the handling of the case. To illustrate, we quote the following from this instruction: "If you further find and believe from the evidence that defendant, its agents and attorneys failed and neglected to act in good faith in its conduct and handling of the Zumwalt Company case in the suit of Carl E. Burneson, against Zumwalt Company * * *."

Defendant next contends that the instruction failed to submit any facts upon which a finding of bad faith could be predicated. We do not agree with defendant's contention, but assuming the instruction is susceptible to this contention, it would not be reversible error as the trial court gave instruction No. 2 at the request of defendant, which instruction was a converse of instruction No. 1. Instruction No. 2 stated: "Yet if you further find and believe from all the facts and circumstances in evidence that defendant Utilities Insurance Company in so acting acted in good faith and with such care, skill and diligence as a person of ordinary prudence would exercise in the conduct and management of his own affairs of the same nature and under the same circumstances as the facts appeared before and during the trial of Burneson v. Zumwalt Company, then your verdict should be for defendant."

On the point now under consideration, both instructions are alike. Neither makes any definition of good or bad faith. Under·these circumstances the defendant cannot complain, because its complaint is common to its own instruction. Roeslein v. Chicago & E. I. R. Co., 214 S. W. 2d 13; Bowers v. Etherton, 216 S. W. 2d 83.

Both of these instructions submitted bad faith and negligence in the conjunctive in the handling of the Burneson case by the defendant, but no point is made of the negligence question by defendant. We merely call attention to this fact as it was not necessary to submit the question of negligence since we have already ruled that liability is predicated upon lack of good faith and not negligence.

These are the only assignments of error made by defendant in its appeal.

In their cross-appeal, the plaintiffs first contend that the trial court erred in refusing their instruction for vexatious delay and attorney's fee. They contend that under section 6040, R. S. Mo., 1939, they have a right to submit these questions to the jury. That section reads:

"In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

We think that this section applies only to actions *ex contractu* to recover for refusal to pay under the terms of a policy of insurance. If defendants had not paid the limit of their policy on the judgment obtained by Burneson, then this section would be applicable. But that is not the case. This action is a tort action. It is not an action to recover "any loss under a policy" of insurance. It is true it grew out of a contract, a policy of insurance. No action on a contract will lie against an insurance company for that part of a judgment recovered against the insured which is in excess of the policy limit. See 131 A. L. R. 1500, and cases therein reviewed. We hold that the trial court properly refused to submit this issue to the jury.

Plaintiffs next contend that the trial court erred in refusing to submit their instructions authorizing exemplary or punitive damages. Plaintiffs have cited many negligence cases that allow punitive damages. But since we have ruled this is not a negligence case, they are of very little value in determining this assignment of error other than defining the general rule on that subject. Before punitive damages can be awarded, there must be evidence to show that the defendant maliciously, willfully, intentionally or recklessly injured the

plaintiffs. State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S. W. 2d 46.

We are of the opinion that there is no evidence in this case that would warrant the submission of punitive damages to the jury. The most that can be said of the evidence in this case is that defendant did not act in good faith in handling the Burneson case. That is to say that under the facts of that case it could be said that defendant looked after its own interest only, while under the law it owed a duty to have considered the Zumwalt Company's interest. "If, in the effort to do this, its own interest conflicted with those of respondent, it was bound, under its contract of indemnity, and in good faith, *to sacrifice its interests in favor of those of the respondent.*" Tyger River Pine Co. v. Maryland Cas. Co., 170 S. E. 346, 1. c. 348. This the defendant failed to do. But we are unable to find from this record where the defendant maliciously, willfully, intentionally or recklessly inflicted injury on the Zumwalt Company.

It follows the judgment of the trial court should be affirmed. It is so ordered. All concur.