261 S.W.2d 502 (1953)
WALKER
v.
HUDDLESTON.
No. 21853.
Kansas City Court of Appeals. Missouri.
October 5, 1953.
*503 Lucien W. Littick, Walter A. Raymond, Kansas City, for appellant.
George L. Walker, George T. O'Laughlin, Kansas City, for respondent.
CAVE, Presiding Judge.
Plaintiff instituted a suit in the circuit court of Jackson County against defendant for the conversion of plaintiff's 1937 Tudor Ford automobile, and prayed for actual and punitive damages. Upon a trial to a jury a verdict was returned for the plaintiff in the sum of $525 actual damages and $492 punitive damages. While the motion for a new trial was pending, plaintiff voluntarily remitted $450 of the actual damages, and the motion for a new trial was overruled and judgment entered accordingly. Defendant appealed.
The petition alleged in substance that on July 2, 1946, plaintiff was the owner and in possession of the Ford automobile in question; that on that day it was stolen by some person unknown, and later parked at a place unknown; that thereafter, on or about July 7, 1946, defendant took possession of said automobile without plaintiff's knowledge and consent, and on or about July 19, 1947, converted said automobile *504 by selling the same and keeping the proceeds thereof; that said conversion was unlawful, wanton, willful and malicious, entitling plaintiff to punitive damages.
The answer alleged that defendant was authorized by the sheriff of Jackson County to tow in wrecked cars left on the highways of said county; that on July 6, 1946, he was ordered by the sheriff to tow in a wrecked and abandoned car bearing engine number 128342; that he removed said car as directed by the sheriff; that said car was stored in his garage until July 11, 1947; that on June 9, 1947, he instituted a suit in the magistrate court at Independence, Jackson County, for towing and storing charges in the sum of $178.50; that having no knowledge of the owner of the car, he named "John Doe" as defendant; that on July 1, 1947, upon the case being called and no one appearing in opposition, the court rendered judgment against "John Doe" for said amount; that on July 11, 1947, after notices of sale, under execution, had been published and posted, he bought said automobile at such sale for $75; and prayed that he be discharged.
There was no reply filed, but the case was tried as if one had been filed.
The evidence discloses the following facts: That on July 2, 1946, plaintiff was the owner of the automobile in question; that on that date it was stolen; that plaintiff immediately reported the theft to the police and joined them in searching for the car, which was not found; that he made a full report to the police, giving the motor number, the license number, model, make, etc.; that at the time the car was stolen it had a city license sticker on the windshield and a state license plate on the rear; that he made frequent inquiry of the police concerning his car, but did not report the theft to the sheriff's office. On July 6 the sheriff directed the defendant to go to 9400 Wilson road, in Jackson County, and transport to his garage an abandoned automobile. Defendant operated a garage and had been working with the sheriff's office in this manner for a number of years. The practice was that when the owner of such a car was found the sheriff's office would give the owner a release ticket, which authorized the defendant to deliver the car to the true owner. A deputy sheriff testified that the sheriff's deputies and defendant were instructed to try to find the owner of any abandoned car; and that the practice was for the sheriff's office to notify the Motor Theft Bureau of the police department when an abandoned car was found; however, that was not done in the instant case.
In accordance with the sheriff's directions, defendant towed this car to his garage and he testified that at that time the car had been ransacked; the two front wheels and tires, the battery and radio, and the city and state licenses were missing.
Defendant stored the car until June 9, 1947, at which time he filed a suit in the magistrate court for the amount of his towing and storage charges. That suit was begun by defendant filing a statement of account which, as read into the record, is as follows: "A bill from Quincy Huddleston, d/b/a Huddleston Garage, against John Doe, for a towing charge of $10, and storage from July 7, 1946, to June 9, 1947, for * * * $168.50, a total of $178.50." On the same day an affidavit in attachment was filed, captioned "Quincy Huddleston, plaintiff v. John Doe, defendant." The affidavit alleged several statutory grounds for attachment, including, that the defendant was a non-resident of Missouri. On July 1 a general judgment was rendered against defendant (John Doe) by default for the amount sued for. That judgment was introduced by the defendant in the instant case during cross-examination of plaintiff's witness, who was clerk of the magistrate court. This witness then testified, without objection, that an execution was issued on the judgment and that notices of sale were posted and the car in controversy was sold under such execution to defendant Huddleston for $75.
*505 The record further discloses that after such sale a certified copy of the pleadings and judgment was sent to the State Department of Revenue by the defendant Huddleston, together with a request that a certificate of title for said car be issued to him, which was done. Thereafter, Huddleston sold the car for $75 to a third person and kept the money. In June, 1949, plaintiff saw his car on a used car lot, and through the efforts of the police he learned of the disposition of his car by Huddleston and brought this suit for conversion.
Defendant first contends that his motion for a directed verdict at the close of all the evidence should have been sustained because there was no substantial evidence of conversion, since defendant took possession of the car under the orders of the sheriff, and that the sale was made under an execution on a judgment regularly and properly rendered by the magistrate court.
Under this point defendant argues that his answer effectively pleaded res judicata of the issues involved in the instant suit, and that no reply was filed and, therefore, he was entitled to judgment on the pleadings. It is unnecessary to decide whether the answer amounted to a plea of res judicata in so far as plaintiff's claim is concerned because, if the allegations in the answer did require a reply, defendant waived whatever rights he had by going to trial on the issues as though a reply had been filed. He did not ask for a default judgment or for a judgment on the pleadings. Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733, 735; McIntosh v. Foulke, 360 Mo. 481, 228 S.W.2d 757, 759. There is no merit in this contention.
Defendant next contends, under this assignment, that the record and judgment of the magistrate court proceedings are regular on their face and are not subject to collateral attack. And the court should have sustained his motion for a verdict. That is a correct statement of the general rule, and the cases cited by defendant support it. Deichmann v. Hogan, Mo.App., 26 S.W.2d 874, 875. However, it is equally true "that in the absence of waiver a judgment is subject to collateral attack because of its rendition against one who never was legally served with process of the court." Liechty v. Kansas City Bridge Co., Mo.Sup., 162 S.W.2d 275, 279; Thieman Bros. v. Bodine, 239 Mo.App. 875, 202 S.W.2d 912. In the last cited case, after reviewing many authorities, it was held that judgments of courts of general jurisdiction may be overthrown by other portions of their record of equal dignity and importing the same verity which demonstrates that their recitals in the judgments are untrue, and the party attacking a judgment of such a court collaterally may introduce the whole record in the given cause to show that the court had no jurisdiction, either over the person or subject matter, and when it so appears its judgment is void, and this is true although the judgment recites that a defendant has been served with process. See, also, Hirst v. Cramer, Mo.Sup., 195 S.W.2d 738.
The question which gives us concern is whether the proceeding in attachment against "John Doe" and service by publication to "John Doe," without further identification or description, is sufficient to give the magistrate jurisdiction of the action.
In Vittert v. Melton, Mo.App., 78 S.W. 2d 467, 469, it is said: "Attachment proceedings are purely statutory, and a strict compliance with the requirements of the statute is essential to jurisdiction, and, where the proceedings originate in a justice court, its jurisdiction must appear on the face of the record." See, also, Bryant v. Duffy, 128 Mo. 18, 30 S.W. 317.
Section 521.680 RSMo1949, V.A.M.S., provides for constructive service in magistrate courts where plaintiff cannot be personally served, and Sec. 521.660 provides that the law governing attachment in circuit courts shall apply in magistrate courts so far as not inconsistent with the provisions especially applicable to magistrate courts; and Sec. 506.160, Par. 4, authorizes constructive service on unknown persons in circuit court actions. Defendant contends that this last section, Par. 4, authorized *506 him to bring the attachment proceedings in the name of "John Doe" because he did not know the name of the true owner of the automobile attached. This paragraph reads: "When the names of one or more defendants are unknown to plaintiff, he may so state in his verified petition, or in a separate affidavit for order of publication, and the court or judge or clerk thereof shall issue an order of publication of notice to the unknown defendant or defendants in the same manner prescribed in subsection 3 above, and the notice of publication shall be published in like manner. It shall be sufficient to name or describe said unknown defendants as the heirs, grantees, or successors of the person to whom the property to be affected was last known to have been transferred." (Italics ours.)
Assuming, without deciding whether this statute is applicable to the magistrate court proceedings, it will be observed that when the name of a defendant is unknown to plaintiff he must so state in his verified petition or in a separate affidavit for an order of publication. No such verified petition or separate affidavit was filed in the attachment suit begun in the magistrate court. Thus this section would not authorize the magistrate or the clerk to issue an order of publication or the posting of notices of the commencement of the suit. This is the only statute we have authorizing service of process by publication on an unknown defendant, and all the cases hold that it must be strictly complied with.
Indicative of the strictness with which our courts view constructive service in attachment suits, we call attention to Missouri, Kansas & Texas Railway Co. v. Morris, 153 Mo.App. 667, 134 S.W. 1027, 1028. That was a proceeding in a justice of the peace court by attachment against a non-resident. The complaint and notice of publication designated the defendant as "W. E. Seifer." That was not his correct Christian name, and it was held the justice acquired no jurisdiction to render judgment sustaining the attachment. The court quoted with approval this language from Skelton v. Sackett, 91 Mo. 377 (syllabus), 3 S.W. 874: "Where, in an action against a nonresident, the order of publication against the defendant gave his name as Q. R. Noland, instead of Quinces R. Noland, and there was no personal appearance under the order of publication, the court acquired no jurisdiction." See, also, Woodside v. Durham, 317 Mo. 15, 295 S.W. 772, 53 A.L.R. 884.
If the use of an incorrect Christian name in the publication will not give the court jurisdiction by constructive service, certainly the use of a fictitious name alone would give notice to no one. In the instant case neither the person sued nor the property attached was described or identified in the statement of account or affidavit of attachment.
The Supreme Court of Georgia defines "John Doe" in rather descriptive language, and we quote a portion to illustrate the danger that might follow in permitting constructive service, which is very poor service at best, upon an intangible and a nonexistent defendant. In Rutherford v. Hobbs, 63 Ga. 243, 244, 245, the court said: "John Doe is a mere figment of the law's imagination, with no more existence as a real suitor than Mercury has as a real god. Only during high poetic transport does the law regard him as a true, objective personality. Though born of the muse, he is dry and commonplace enough to be engaged in the extensive real estate business which he pretends to carry on, but in very truth, he is a phantoma legal will-o'-the-wisp, an ingenious conceit of the law in its rapt poetic moods."
Some states have a statute providing that a party defendant, whose name is unknown, may be sued by a fictitious name. 67 C.J.S., Parties, § 98, page 1094. We have no such statute in this state. But in those states which have such a statute, the courts hold that "Parties whose names are unknown should be designated by such names as plaintiff supposes they possess or some identifying description should be given. The ignorance of the name must be real, and not willful, ignorance, or such as might be *507 removed by mere inquiry or a resort to means of information. Compliance with a statute for making unknown persons parties is jurisdictional, and there must be a distinct allegation to the effect that the name is so used by reason of ignorance of defendant's true name or this fact must be set forth together with other required facts in an affidavit. In order to make unknown persons parties, the requirements as to the issuance of process and service thereof, either actual or constructive, must be complied with." (Italics ours.)
It appears from the record that the complaint filed in the magistrate court was not verified and gave no description or identification of "John Doe" the defendant, nor did the affidavit for attachment supply such information. Under such circumstances, the magistrate court acquired no jurisdiction authorizing service of process by posting notices of the commencement of the suit.
Defendant cites Maddux v. Gardner, 239 Mo.App. 289, 192 S.W.2d 14, 18, as authority for bringing his action against John Doe. That was a suit for wrongful death, prosecuted against the trustee of the Chicago & Alton Railroad Company and "John Doe" as the engineer on the train in question and "Richard Roe" as the fireman on such train. The question under consideration was whether plaintiff could amend his petition by inserting the true names of the engineer and the fireman after learning such names. We held that he could, because it appeared from the petition that it was the intention of the plaintiff to sue the engineer and the fireman, and that the substitution of the true names for the fictitious names was not the addition of new parties. Thus there was an "identifying description" of the parties intended to be sued. We did not discuss or decide whether a judgment against "John Doe" and "Richard Roe" would have been valid. In that opinion we quoted from 47 C.J., p. 240, the following "Where a fictitious name stands alone in its designation of a party to the action and imports no legal entity, and where the complaint itself is silent as to the character of the party so designated, an amendment cannot be allowed, adding to the fictitious designation the name of the individual as the person in whose favor the action is prosecuted * * *." See, also, 67 C.J.S., Parties, § 156. If the complaint cannot be amended under such circumstances, certainly the court cannot acquire jurisdiction to proceed to a final judgment.
It is our conclusion that the judgment rendered in the magistrate court was and is void and is no defense to the present action.
Defendant's second assignment is that the court erred in submitting the issue of punitive damages because there is no substantial evidence supporting such issue. We think this assignment must be sustained. The rule is that "Before punitive damages can be awarded, there must be evidence to show that the defendant maliciously, willfully, intentionally or recklessly injured the plaintiffs." Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, 756. In Patrick v. Employers Mutual Liability Ins. Co., 233 Mo.App. 251, 118 S.W.2d 116, 126, this court quoted with approval the principle of law applicable to allowance of punitive damages: "The party must know that the act is wrongful and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act."
The undisputed evidence is that defendant took possession of the abandoned automobile on the highway at the direction of the sheriff; that this was the common practice of the sheriff's office in order to keep the highways free of wrecked and abandoned vehicles; that the garage owner stored the vehicle, and if the true owner was ascertained the car would be delivered to him upon orders of the sheriff; if the owner was not located, within a reasonable time, then a proceeding in attachment would be filed in the magistrate court and the car sold for towage and storage charges, and title procured for the purchaser at such sale. A deputy sheriff testified that it *508 was the policy of the sheriff's office to seek the true owner, and that the defendant had been notified that he should join in an effort to locate the owner. The defendant denied that he had received such instructions. At any rate he did not do so, and the sheriff's office made no effort to locate the owner; however, the defendant would not be charged with the negligence of the sheriff's office. The sheriff or the defendant could have ascertained the name and address of the owner of the car by consulting the Commissioner of Motor Vehicles in Jefferson City, who is required to keep an index according to motor number of vehicles registered in this state. Sec. 8380(b), R.S. 1939, Section 301.350 RSMo 1949, V.A.M. S. This they did not do. It is also in evidence that after defendant had stored the car for more than eleven months he filed with the magistrate a statement of account for charges, and the clerk of the magistrate court, who had been a justice of the peace for more than twenty years, prepared for defendant the attachment papers and testified, without objection, that they were prepared in the usual and customary way according to the practice in that magistrate court.
We are of the opinion that the customary practice in magistrate courts in suits of this kind will not establish a proper legal procedure to deprive an owner of his property. It hardly rises to the dignity of a precedent, but we do think such evidence should be considered in determining whether the defendant maliciously, wilfully, intentionally or recklessly converted plaintiff's property. The defendant was not learned in the law and relied on the magistrate and his clerk to prepare properly the necessary pleadings and papers for a valid judgment. There is no evidence that defendant undertook the proceedings in the magistrate court in bad faith. We have held that such proceedings were invalid, but this is the first time in this state that such question has been directly decided.
All the facts and circumstances must be taken into consideration in determining whether the issue of punitive damages should have been submitted and, when that is done, we are of the opinion that the evidence is insufficient to justify the submission of that issue.
Plaintiff cites and relies on Spitzengel v. Greenlease Motor Car Co., 234 Mo.App. 962, 136 S.W.2d 100; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372, and Luikart v. Miller, Mo.Sup., 48 S.W.2d 867. We have considered those cases and the facts therein clearly distinguish them from the facts in the present case.
The defendant also contends that plaintiff's Instruction "B" was erroneous in the manner in whch it submitted punitive damages. Since we hold that such an issue should not have been submitted, it is unnecessary to discuss the sufficiency of the instruction.
If the plaintiff will, within fifteen days from this date, remit the sum of $492, the amount of the punitive damages, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded.
All concur.