John E. FRANTA, Respondent,

v.

Raymond S. HODGE, d/b/a Associated Realty Company and Ross S. Jones, Appellants.

No. 22560.

Kansas City Court of Appeals.

Missouri.

May 6, 1957.

Dan R. Boyle, Charles V. Garnett, Kansas City, for appellants.

Walter R. James, R. Kenneth Elliott, North Kansas City, for respondent.

BROADDUS, Presiding Judge.

Plaintiff, John E. Franta, recovered a verdict and judgment against defendants for $1,000 actual and $1,000 punitive damages. The trial court, however, on defendants' motion, directed a remittitur of the punitive damages because of an erroneous instruction, but, on plaintiff's after-judgment motion, modified the remittitur order to provide for a new trial on the issue of

punitive damages only. Defendants have appealed.

Plaintiff's petition alleged that on or about June 9, 1953, he delivered to defendants Ross S. Jones and Raymond S. Hodge the sum of $1,000; that said sum was delivered to defendants for them to offer said sum to William W. Smith and his wife; that defendants failed to offer said sum to the Smiths, but did wilfully, wantonly and maliciously on or about June 9, 1953, convert to their own use and have ever since refused to return to plaintiff his $1,000, though he has many times requested its return. Plaintiff prayed for judgment against defendants for the sum of $1,000, together with interest thereon at 6% from June 9, 1953, as actual damages, and for the further sum of $2,500 as punitive damages.

· Defendants' answer denied specifically the allegations of plaintiff's petition with the exception that defendants admitted "that they did not offer said sum to William W. Smith and wife, but did offer said sum to the owners of the realty in question, and said sum was accepted * * *."

Defendant Hodge is a licensed real estate broker, and carries on his business under the trade name of Associated Realty Company. Defendant Jones is a licensed real estate salesman associated with Hodge.

Plaintiff testified that on June 9, 1953, he saw an advertisement in the Kansas City Star stating that a piece of property referred to as "Windemere Village", (the legal description being Lot 10, Block A, Windemere Village) was for sale by the Associated Realty Company. The name "Ross Jones" appeared in the advertisement. Plaintiff called the Realty office and talked to Mr. Jones. According to plaintiff, Jones "said he would be glad to show me the property, although he had an appointment to show it at five o'clock, but if I would come over right away, about four o'clock, he could probably sandwich me in, and I told him I would go right over."

Accompanied by his wife plaintiff drove to the Associated Realty office in Raytown. There they met defendant Jones. Jones suggested that "they drive out to the place in his car, which we did." On the way out Mrs. Franta asked Jones why the Smiths were selling the house, and he said that Mrs. Smith was a piano teacher and wanted a location closer in to Raytown for the accommodation of her pupils. When they arrived at the house Jones introduced the Frantas to Mrs. Smith. Plaintiff and his wife were shown through the house. As they left the house plaintiff said he "asked Mr. Jones for an option on it, knowing that he was going to show it to another party." They "agreed on $11,600 as the price to offer the Smiths that evening." Plaintiff gave Jones a check for $1,000, payable to the Associated Realty Company. At the same time the Frantas signed the following memorandum presented to them by Jones:

"Associated Realty Company
"Kansas City 5, Mo., 6/9/53
"Salesman R. Jones

"You are hereby authorized to offer the owner of the property located at Windemere Village, the sum of 11,600.00 Dollars for said property, on the following Terms: $1000.00 cash, herewith, as earnest money to be returned if offer is not accepted.

\* \* \* \* \* \*

"I hereby agree to hold open this offer for acceptance by the owner of said property, until 12:00 P.M., June 10, 1953.

"X  John E. Franta
"X  Dorothy P. Franta
"Accepted
"Ross Jones

"Owners"

Both plaintiff and his wife testified that the signature "Ross Jones" appearing underneath the word "Accepted", was not placed thereon in their presence. Both also testified that Jones did not tell them that he was the owner of the house, nor did he tell them that the Smiths were not the owners.

On the next day, June 10, 1953, the Frantas were requested to execute a contract for the sale of the property in which Jones was named as "the seller." Plaintiff and his wife refused to sign it. Plaintiff said that when he saw the name "Ross Jones" named as the seller "it did not seem quite right to me. * * * I was under the impression that there was a chance that I could be defrauded * * *. I was afraid of fraudulent dealing."

It developed from the evidence that on June 1, 1953, eight days before plaintiff answered the advertisement, defendant Jones had entered into a contract with the Smiths which recited that the Smiths, as sellers, "have sold and agree to convey" the property here involved to Jones for the sum of $11,000.

Defendants testified that in the operation of their business, they frequently buy outright properties that are offered as trade-ins, taking title themselves and applying the purchase price or value of the trade-in to the new property being sold to the customer. That was true in the instant case. The Smiths were to acquire the property at 10408 East 69th Street, referred to in the evidence as the "Chappelow property." And, according to Hodge "Chappelow refused to take the property (Smiths); that is why we took it in."

Defendant Jones was placed on the stand by plaintiff. He was asked who owned the property at the time he took plaintiff to see it. His answer was: "At that time I did. Q. Yes? Mr. Hodge and myself." He admitted that he did not tell plaintiff that he was the owner. He was asked: "And you knew that they (the Frantas) thought that she (Mrs. Smith) was the owner, didn't you? A. I would have to presume so." Jones also testified that when plaintiff handed him the $1,000 check he "said I would take it to the owners and get either a yes or no."

Defendants have retained the $1,000 paid them by plaintiff. That demand was made upon them by plaintiff for its return stands admitted.

Defendants' first contention is that the trial court erred in not directing a verdict for them. In our opinion the contention lacks merit.

■■ The evidence discloses that plaintiff signed the memorandum dated June 9, under the distinct impression that he was to acquire the property from the Smiths. We think that he was justified in having that understanding not only from what Jones said to him, but also because of the fact that Jones was purporting to act as a real estate salesman. As is to be seen, the authorization of the Frantas was directed to "Salesman R. Jones." Under our statute (Section 339.010 RSMo 1949, V.A. M.S.) a real estate broker or salesman is one who sells "the real estate *of others;*" not his own property. When plaintiff, on June 10, was asked to sign the contract in which defendant Jones, instead of the Smiths was named as the seller, he refused and demanded the return of his money. In effect, he elected to rescind. This he had a right to do. As was said by a highly respected court in the case of Pancoast v. Dinsmore, 105 Me. 471, 75 A. 43, 45:

" 'A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. It may be of importance to him who performs the contract. * * * He may contract with whom he pleases, and the sufficiency of his reasons for so doing cannot be inquired into.' And, were such reasons open to inquiry, it is easy to see that one might be willing to take the warranties of one person in a deed, when he would not take those of another."

■ Defendants' other contention is that plaintiff is not entitled to punitive damages, and the court erred in directing a new trial on that issue only. We have reached

the conclusion that, under the facts of this case, the point is well taken.

In the case of Walker v. Huddleston, Mo.App., 261 S.W.2d 502, 507, this court said:

The rule is that " 'Before punitive damages can be awarded there must be evidence to show that the defendant maliciously, willfully, intentionally or recklessly injured the plaintiffs.' Zumalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, 756. In Patrick v. Employers Mutual Liability Ins. Co., 233 Mo.App. 251, 118 S.W.2d 116, 126, this court quoted with approval the principle of law applicable to allowance of punitive damages: *'The party must know that the act is wrongful,* and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act.' "

There is no evidence in the instant case showing that defendants did not act in good faith and in the honest belief that their acts were lawful. There was no confidential relationship between the parties to this suit. Plaintiff's only complaint is that he was deceived as to the ownership and induced to believe that the Smiths were the owners, rather than Jones. When defendants told plaintiff that the Smiths were selling so that Mrs. Smith could be near to her piano pupils, they merely answered plaintiff's question truthfully.

It follows from what we have said that the judgment should be reversed and the cause remanded with directions to the trial court to set aside its order granting a new trial on the issue of punitive damages only, and to enter a new judgment in plaintiff's favor for $1,000 actual damages, together with interest thereon at 6% per annum from June 10, 1953. It is so ordered. All concur.