258 F.2d 709
 AMERICAN FIDELITY & CASUALTY COMPANY, Inc., Appellant and
Cross-Appellee,
v.
The GREYHOUND CORPORATION, Appellee and Cross-Appellant.
The GREYHOUND CORPORATION, Appellee and Cross-Appellant,
v.
AMERICAN FIDELITY & CASUALTY COMPANY, Inc., Appellant and
Cross-Appellee.
 No. 16684.
 United States Court of Appeals Fifth Circuit.
 Aug. 18, 1958, Rehearing Denied Sept. 19, 1958.
 
 Herschel E. Smith, Cecyl L. Pickle, Knight, Smith, Underwood & Peters, Miami, Fla., for appellant and cross-appellee.
 Willis H. Flick, T. J. Blackwell, Blackwell, Walker & Gray, Miami, Fla., for appellee.
 Before RIVES, JONES and WISDOM, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 The Greyhound Corporation, the appellee, was insured by American Fidelity and Casualty Company, Inc., the appellant, against liability in the operation of motor vehicles to the extent of $40,000 for any one person killed or injured and $100,000 for personal injuries received in any one accident. As a result of a collision on a Florida highway in which a Greyhound bus was involved a suit for personal injuries resulted in a judgment against Greyhound for $50,000 in favor of Anna Jones and for $17,500 in favor of her husband, T. R. Jones. The judgment was affirmed by the Supreme Court of Florida. Florida Greyhound Lines v. Jones, Fla., 60 So.2d 396. Excess Insurance Co. carried for Greyhound motor vehicle liability insurance coverage exceeding the primary liability of American. Excess brought a declaratory judgment suit against Greyhound for a determination that, because timely notice of the claims of Mr. and Mrs. Jones had not been given as its policy required, it had no liability to discharge that portion of the Jones judgment which exceeded the limits of American's policy. Summary judgment, entered for Excess, was affirmed. Greyhound Corp. v. Excess Insurance Co. of America, 5 Cir., 1956, 233 F.2d 630. In the suit of Excess against Greyhound a third party action was brought by Greyhound against American alleging that American breached the duty it owed Greyhound in failing to give timely notices and information, and that it exercised bad faith in the settlement negotiations with Mr. and Mrs. Jones. Judgment was entered for Greyhound. This Court reversed on the ground that the court's instruction that the insurer's duty in settlement negotiations was to use ordinary care and diligence was error, and it was held that the Florida test of liability is good faith. American Fidelity and Casualty Co., Inc., v. Greyhound Corporation, 5 Cir., 1956, 232 F.2d 89. A new trial was had. During the trial the court struck from the third party complaint all of the claims for relief except the one alleging that American exercised bad faith in the settlement negotiations. The second trial, like the first, resulted in a verdict and judgment for Greyhound and again an appeal has been taken. Twenty specifications of error are made which American condenses into eight questions which are submitted for our consideration.
 
 
 2
 The first nine of American's specifications of error assert in various ways that the verdict and judgment are contrary to the law and the evidence. American devotes eight pages of its brief to a resume of the facts. Greyhound uses eleven pages for the same purpose. Each of the parties stresses the phases of the evidence deemed most favorable to it. We see no useful purpose that would be served by setting out the facts except to the extent required in discussing the other questions presented. The facts as they are reflected by the evidence in the record and the interpretations placed upon it by briefs and in argument have had our careful consideration. We agree with the conclusion of the district court that the case was one for a jury.
 
 
 3
 The policy of insurance which American issued to Greyhound contained an indorsement by which Employers Reinsurance Corporation reinsured a part of the liability of American, and under this reinsurance American recouped $30,000 of its ultimate payment of $40,000 applied on the Jones judgment. The court admitted the reinsurance indorsement, along with the policy, in evidence over American's objection that the evidence of reinsurance was improper. We think the evidence was material. In a like situation the Supreme Court of Missouri had before it a case where the insurer had reinsured $5,000 of its $10,000 coverage. A settlement offer within the policy limit was received. The insurer offered to pay $4,500 if the insured would pay the difference. The insured declined and the claimant recovered a judgment for an amount exceeding the policy limit. With respect to admissibility of evidence of reinsurance the court said:
 
 
 4
 'We think the jury could conclude that the reason defendant did not settle the Burneson suit was because, under no circumstances, would it ever be liable for more than $5,000, and it would prefer to take a gamble on getting a favorable verdict rather than to make a settlement within the limits of the policy. If this was its reason for not accepting Burneson's offers, then it was an intentional disregard of the duty it owed the Zumwalt Company and of course defendant did not act in good faith. The policy holder was not interested in what the reinsurer would do. It had a right to look to the defendant who had issued the policy to protect its interest.' Zumwalt v. Utilities Insurance Co., 360 Mo. 362, 228 S.W.2d 750, 754.
 
 
 5
 The reasoning of the Missouri court is sound. American says that reinsurance has no place among the facts of this case because its claims adjuster and its local attorney had no knowledge of reinsurance. But at American's home office in Richmond it was known that there was reinsurance, and by the head of American's claims department, at its home office, a $5,000 settlement limit was placed.
 
 
 6
 Prior to the trial depositions were taken, including the deposition of C. J. Forster, General Claims Agent for Greyhound. Counsel for American propounded this question:
 
 
 7
 'Well, you are contending in this case, Mr. Forster, or your company is, that we acted in bad faith in not settling with the Joneses; is that your contention?'
 
 
 8
 to which Mr. Forster answered:
 
 
 9
 'I do not believe that is our contention.'
 
 
 10
 American offered in evidence this question and answer, but no other part, out of the deposition. Objection was made and sustained. Error is assigned and American contends that the claim agent made an admission against interest which should not have been excluded. The Forster deposition was taken on December 1, 1953, prior to the first trial. The third party complaint, as it then stood, alleged, among other things, that American acted negligently in the settlement negotiations. See American Fidelity & Casualty Co. v. Greyhound Corporation, supra. Whatever Mr. Forster may have believed the contention of Greyhound was at the time his deposition was given, it cannot be doubted that when the excerpt from the deposition was offered in evidence Greyhound was contending that American had acted in bad faith. Not only was it so contending, but just before the profert was made the court had stricken all of the claims of the third party complaint except the one which alleged bad faith. It then had no contention available to it other than bad faith. The exclusion of the portion of the deposition tendered by American was not error.
 
 
 11
 About three weeks before the trial of the Jones suit American wrote Greyhound declining to say definitely whether the Jones claim would involve excess but expressing the belief that it would not. American's letter continued:
 
 
 12
 'However Mrs. Jones is suing for $75,000 which is, of course, in excess of your limits with the American Fidelity & Casualty Company. We are, therefore, taking this opportunity to invite you or your excess carrier to associate counsel in the trial of this case, with our trial attorneys.'
 
 
 13
 It is perhaps unimportant but it might be noted that, when the letter was written, the complaint had been amended and the suit was for $250,000. Excess Insurance Company declined liability. Counsel for Greyhound were associated with American's attorneys in the trial of the Jones case. After the judgment for Mr. and Mrs. Jones was entered, Greyhound's counsel joined with American's attorneys in the appeal to the Supreme Court of Florida where it was urged that the judgment was excessive. American sought to establish the facts as to the participation by Greyhound, through its attorneys, in the trial and appeal of the Jones case. The trial court excluded the evidence. Asserting error American contends that the Greyhound attorney would not have argued that the verdict and judgment in the Jones case were excessive had he not believed it to be so. This, says appellant, was strong evidence that American did not use bad faith in settlement negotiations. Samuel Johnson observed that, 'A lawyer has no business with the justice or injustice of the cause which he undertakes.' It is not necessary to endorse this statement in order to dispose of the contention of American. Greyhound claimed that American acted in bad faith in responding to the Jones settlement offer of $25,000 with what it asserted to be a ridiculously inadequate counteroffer of $4,000, in failing to make an offer of $10,000 with information justifying a belief that such offer would be accepted, in failing to make a sufficient investigation, and in other respects. These claims are not inconsistent with the contention that the Jones verdict of $67,500 was excessive, and even if it were otherwise, evidence of the participation by Greyhound counsel in the trial and appeal of the Jones case would not tend to show that American acted in good faith in the settlement negotiations. On the eve of the trial, Greyhound learned of the possibility that American's limit might not be sufficient to pay the Jones claim and its excess insurance carrier disclaimed liability. American offered it the privilege of participating in the litigation in order that it might try to protect its uninsured potential liability. We think Greyhound was entitled to exercise the privilege offered without prejudicing its claim against American of bad faith in settlement negotiations.
 
 
 14
 American requested and the court refused to give the following instructions to the jury:
 
 
 15
 "Bad faith' is defined as the actual intent to mislead or deceive another, and refers to a real and actual state of mind capable of either direct or circumstantial proof. Bad faith cannot be imputed unless there was something in the particular transaction equivalent to fraud, actual or constructive.'
 
 
 16
 The refusal to give this instruction is assigned as error. This requested instruction was properly refused because of the use of the phrase 'equivalent to fraud, actual or constructive.' Then too, there is a contradiction inherent in the instruction. It defines bad faith as the actual intent to mislead and then says that bad faith cannot be imputed unless there is present the equivalent of fraud, actual or constructive. 'Actual fraud always involves an intentional untruth between parties to a transaction, and is therefore limited to misrepresentations, concealments, or other artifices employed to deceive another.' 14 Fla.Jur. 521, Fraud & Deceit, 2. But, says the Supreme Court of Florida, 'Not so of constructive fraud. 'Constructive fraud is simply a term applied to a great variety of transactions * * * which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud,' * * *.' Douglas v. Ogle, 80 Fla. 42, 85 So. 243, 244.
 
 
 17
 The requested instruction is based upon the holding in Johnson v. Hardware Mutual Casualty Co., 108 Vt. 269, 187 A. 788. In the Johnson opinion, however, it is said that while an insurer in considering an offer of compromise may look after its own interests it must, in the exercise of good faith, have due regard for the interests of the insured as well. A portion of the language of the Johnson case suports the proposition for which American cites it but, we think, its rationale falls short of sustaining the doctrine. The leading Florida case on the question of an insurer's liability for failing to negotiate a settlement within the policy limits is Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, 857. It is stated by American that the Shaw case reveals that Florida considers bad faith to be the same as fraud. The only support for this conclusion is found in the following language of the Shaw opinion:
 
 
 18
 'The conduct amounting to fraud or bad faith was considered in Best Building Co. v. Employers' Liability Assurance Corp., 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464. See note at page 1492 of 71 A.L.R.; Seaton v. Pickens, 126 Tex. 271, 87 S.W.2d 709, 106 A.L.R. 512, and note * * *'
 
 
 19
 We cannot find, as does American, any declaration that an insurer cannot be held liable for a bad faith failure to negotiate a settlement unless the evidence shows the insurer to be guilty of fraud. In the Shaw case it was held as in the cited case of Best Building Co., that an insurer is not liable for mere negligence in failing to settle a claim, but it would be liable if the conduct of the insurer amounted to fraud or if it amounted to bad faith. The court states that recovery could be predicated either upon fraud or upon bad faith but could not be had on negligence alone. Bad faith, as used in connection with claims of the character here considered, is not the equivalent of fraud. See Southeastern Construction Co. for use of Beckham v. Glens Falls Indemnity Co., 81 Ga.App. 770, 59 S.E.2d 751; Cimarron Insurance Co. v. Pace, 212 Ga. 427, 93 S.E.2d 593. The requested instruction was properly refused.
 
 
 20
 The district court, over American's objection, instructed the jury that the burden of proof was on Greyhound to establish all material elements of its claim by a preponderance or greater weight of the evidence. American requested and the court declined to give an instruction that Greyhound must carry the burden of proving American's bad faith by evidence that is clear and convincing and not just by a preponderance of the evidence. The giving of the one charge and the refusal to give the other are specified as error. The contentions are made on the premise that bad faith is the same thing as fraud. Proof of actionable fraud and misrepresentation must be made by clear and convincing evidence. All Florida Land Co. v. Thomas Manor, 136 Fla. 211, 186 So. 416. Since we hold that bad faith and fraud are not just different terms used to express an identical meaning, it does not follow that proof of bad faith must be made by greater weight than by a preponderance of the evidence. The sometimes adopted standard of proof, expressed by the phrase 'clear and convincing, or its equivalent', has been applied not only with respect to fraud but in a number of varied situations. See 9 Wigmore on Evidence 325 et seq., 2498; McCormick on Evidence 679 et seq., 320. We are without any precedent and have been assigned no reason why the clear and convincing measure rather than preponderance of the evidence should be required to establish bad faith. We find no error in the court's refusal to give the one instruction and the giving of the other.
 
 
 21
 American requested the court to give the following instruction:
 
 
 22
 'You are instructed to completely disregard any contentions by the plaintiff concerning any of the following matters:
 
 
 23
 '(a) The alleged failure of the defendant, or of Markel Service, to inform Greyhound that Greyhound was being sued by Mr. and Mrs. Jones for an amount in excess of Greyhound's insurance coverage.
 
 
 24
 '(b) The alleged failure of the defendant, or of Markel Service, to advise Greyhound of the allegations in either the original or amended Declarations or Complaints filed by Mr. & Mrs. Jones against Greyhound.
 
 
 25
 '(c) The alleged failure of the defendant, or Markel Service, to give timely notice to Greyhound of the fact that the amount of damages stated in the original Declaration or Complaint filed by Mr. & Mrs. Jones was increased from $75,000 total to $250,000.00 total, or to any other amount.
 
 
 26
 '(d) The alleged failure of the defendant, or of Markel Service, to advise Greyhound of any of the settlement demands made on behalf of Mr. & Mrs. Jones, or either of them.
 
 
 27
 '(e) The alleged failure of the defendant, or of Markel Service, to advise Greyhound that the Jones case could not be settled within the limits of the insurance coverage.
 
 
 28
 'The Court has now ruled out each and all of the five (5) items just enumerated as having no bearing whatever on this case and as being completely immaterial.'
 
 
 29
 The court declined to give the requested instruction. Error in so doing is asserted. At the time the court struck portions of Greyhound's amended complaint the court charged the jury:
 
 
 30
 'Gentlemen of the jury, at this time the court wishes to advise you that you are not to consider as evidence on the issue in this case, which is the good or bad faith of the defendant insurance company, American Fidelity & Casualty Company, in the handling of the settlement negotiations involved-- you are not to consider any of the statements made by witnesses relative to the giving or lack of giving of notices by the insurance company to the Greyhound Company of the terms of the suit or of the terms of the settlement offers or of the excess letter that was offered.
 
 
 31
 'I merely want to make it clear to the jury that the statements that have been made in the record by deposition or otherwise as to the notice or lack of notice of the amount of the suit, the amount of the settlement offers, the progress of the settlement negotiations, or the excess letter, are immaterial to the issue of whether or not the insurance company and its officials were acting in good faith or acting in bad faith in the handling of the settlement negotiations with the parties involved in the accident, Mr. and Mrs. Jones.
 
 
 32
 'However, the court does wish to point out that the evidence that has been given, while it may be disregarded on the issues of good or bad faith, it is to be considered only to show that Greyhound did not participate in any way in the settlement affiairs.'
 
 
 33
 In striking the averments with respect to the giving of notice from the complaint the district court was eliminating these charges as grounds for complaint and restricting the basic issue to the good faith question. The requested charge would have eliminated any consideration by the jury of American's failure to give notices and information to Greyhound. Since American had the right to exercise its own judgment on the question of whether the claim should be settled or contested, it had the duty to make a diligent effort to ascertain the facts and, upon such factual knowledge, to make an honest decision reached through the exercise of good faith toward the insured. Thus American, in the exercise of its rights to control the suit and any possible settlement, owed to Greyhound, which was precluded from any participation in the suit or settlement negotiations except as American requested, the duty to discover the possible extent of liability and to communicate such fact to Greyhound. Auto Mutual Indemnity Co. v. Shaw, supra. The requested instructions would have precluded the jury from considering the failure of American to discharge its duty to Greyhound by giving information to Greyhound as to the possibility of the recovery exceeding the policy limits. Whether the court's charge to ignore evidence as to notices went too far need not be decided. We do decide that the refusal to give the instructions requested by American was not error.
 
 
 34
 American requested the court to give this instruction:
 
 
 35
 'You are instructed that the insurance company in this case cannot be held liable because of any negligence or alleged negligence in the handling of the Jones claim or lawsuit, or in the handling of any settlement negotiations with reference thereto, or in failing to effect a settlement with Mr. and Mrs. Jones.'
 
 
 36
 The court declined to give the instructions and an assignment of error is predicated thereon. Over the objection of American the court gave the following instructions:
 
 
 37
 'Furthermore, on the question of bad faith in rejecting an offer of settlement within the policy limits, only a decision made by an insurer who exercised diligence in apprising himself of the material facts is entitled to consideration as having been made in good faith.
 
 
 38
 'Therefore, you may consider on this question of good or bad faith whether the investigation made by the insurance company was thorough to permit it to come to some fair, honest and intelligent decision regarding the settlement opportunities in the light of the then existing probabilities.
 
 
 39
 'If the investigation was of the sort to permit an intelligent, fair and honest appraisal, even though not complete in the most minute details, then such fact would be evidence that the insurance company was acting in good faith; but if the investigation was not thorough enough to permit a fair, intelligent and honest appraisal, then such fact is evidence of bad faith.'
 
 
 40
 Error in the giving of this instruction is specified by American.
 
 
 41
 As was said in the prior opinion in this case, 'It thus appears quite clear that the Florida Supreme Court, in the Shaw case, aligned itself with the majority of jurisdictions adhering to the good faith test of the duty placed upon an insurer, rather than the negligence test.' American Fidelity & Casualty Co. v. Greyhound Corporation, supra (232 F.2d 93). In the Shaw case it was said that it appeared that an insurer, in the settlement of claims, should be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business. This is a negligence principle, and from the recitation of it by the Florida Court we reach the conclusion that it has adopted the rule that in the application of the good faith test consideration may be given to the negligence of the insurer in determining whether it has conducted settlement negotiations in good faith. The doctrine is not a novel one. See Note 40 A.L.R.2d 168, 183 et seq. In the earlier decision of the case we said that 'evidence of negligence is admissible on the question of good faith'. The instruction requested by American would preclude consideration of negligence for any purpose. The trial court charged that this was not an action in negligence but a suit founded on a claim that American had acted in bad faith. This was adequate. The refusal to give the requested instruction was proper. A comparison of the instructions given with the opinion in the Shaw case shows that the trial court made a careful attempt to state the principles of law as declared in the Shaw case. We think the attempt was successful and that the holding of Shaw was clearly set forth in the instructions of which American has complained. Cf. American Mutual Liability Insurance Co. of Boston, Mass. v. Cooper, 5 Cir., 1932, 61 F.2d 446; Ohio Casualty Insurance Co. v. Beckwith, 5 Cir., 1935, 74 F.2d 75; Springer v. Citizens Casualty Co., 5 Cir., 1957, 246 F.2d 123; Tully v. Travelers Insurance Co., D.C.N.D.Fla. 1954, 118 F.Supp. 568; Traders & General Insurance Co. v. Rudco Oil & Gas Co., 10 Cir., 1942, 129 F.2d 621, 142 A.L.R. 799. The various factors which have been considered as elements of bad faith are listed in Lewis, Insurer's Liability for Judgments Exceeding Policy Limits, 22 Insurance Counsel Journal (January, 1955) 56, 64. Upon the facts of this case the instructions were not erroneous.
 
 
 42
 We do not find merit in any of American's specifications of error.
 
 
 43
 Greyhound sued, not only for its damages for the failure of American to make good faith negotiations for the settlement of the Jones claim, but also claimed attorneys' fees. The district court, being of the opinion that no attorneys' fees could be recovered in an action of this kind, struck the claim. Greyhound has challenged this ruling by a cross-appeal. If there is to be any recovery for attorneys' fees it must be by virtue of a statute. Main v. Benjamin Foster Co., 141 Fla. 91, 192 So. 602, 126 A.L.R. 1434; Union Terminal Co. v. Turner Const. Co., 5 Cir., 1918, 247 F. 727, 11 A.L.R. 880, 159 C.C.A. 585; United States Fidelity & Guaranty Co. v. Highway Engineering & Construction Co., 5 Cir., 1931, 51 F.2d 894, certiorari denied 284 U.S. 669, 52 S.Ct. 43, 77 L.Ed. 566; Woodmen of the World Life Insurance Society v. Jackson, 5 Cir., 1957, 243 F.2d 558. The Florida statute provides:
 
 
 44
 'Upon the rendition of a judgment or decree by any of the courts of this state against any insurer in favor of the beneficiary under any policy or contract of insurance executed by such insurer, there shall be adjudged or decreed against such insurer, and in favor of the beneficiary named in said policy or contract of insurance, a reasonable sum as fees or compensation for his attorneys or solicitors prosecuting the suit in which the recovery is had.' F.S.A. 625.08.
 
 
 45
 Recovery of attorneys' fees has been allowed on a counterclaim asserted by an insured. Peninsular Life Insurance Co. v. Howard, Fla., 72 So.2d 389. It follows that recovery may be allowed where the insured brings a third party complaint against the insurer under the same circumstances as would permit recovery where the insured was an original plaintiff.
 
 
 46
 The provision of the Florida statute is a procedural one and the attorneys' fees for which it provides are in the nature of a penalty, imposed under the police power of the State, incurred in the conduct of a business affected with a public interest. Feller v. Equitable Life Assurance Society, Fla., 57 So.2d 581; Fidelity-Phenix Fire Insurance Co. of New York v. Cortez Cigar Co., 5 Cir., 1937, 92 F.2d 882 certiorari denied 303 U.S. 636, 58 S.Ct. 521, 82 L.Ed. 1096. In continental Casualty Co. v. Giller Concrete Co., 5 Cir., 1940, 116 F.2d 431, attorneys' fees were allowed under the Florida statute in a suit for declaratory judgment brought by the insured against the insurer although no money judgment was sought. The same result was reached in Phoenix Indemnity Co. v. Anderson's Groves, 5 Cir., 1949, 176 F.2d 246, although there the declaratory judgment was sought by the insurer. The most recent of the reported decisions of the Supreme Court of Florida construing the Florida statute is Virginia Surety Co. v. Russ, Fla., 86 So.2d 643, decided in 1956. In the Russ case, a liability insurance policy covering two trucks was issued to Russ by the insurance company. One of the trucks stopped, it was struck by the other, and a hitchhiking passenger on one of them was killed. Suit for wrongful death was brought. The insurance company refused to defend. Russ employed counsel and successfully defended the action. He then sued the insurance company seeking reimbursement for his attorneys' fees incurred in the damage suit and for attorneys' fees incurred in the suit against the insurer. The trial court awarded judgment for Russ. On appeal the Supreme Court of Florida affirmed. Citing Continental Casualty Co. v. Giller Concrete Co., supra, and Phoenix Indemnity Co. v. Anderson's Groves, supra, the Florida court said:
 
 
 47
 'Appellant contends, secondly, that F.S. 625.08, F.S.A., supra, does not authorize assessment of attorney's fees in a proceeding of this nature. But from a consideration of the literal terms of the statute, as well as its general objectives, it seems to have been plainly intended that an insured should not be forced to bear the cost of representation in such litigation with his insurer when it terminates favorably to him. The construction placed upon it in cases arising thus far lends support to the finding of the court below in this respect.' 86 So.2d 643, 644.
 
 
 48
 The attorneys' fees recovered by Russ for defending the damage suit were incurred as a result of the insurance company's breach of duty under an express provision of the policy imposing on the insurer the duty to defend. The attorneys' fees recovered by Russ which were incurred in his action to recover the fees incident to the damage suit were not directly related to any express policy provision. The express reservation by American of the control of litigation and of the settlement of claims carried with it the implied undertaking, and imposed a duty upon it to Greyhound, to use good faith in negotiating the settlement of claims. It seems clear that, considering the literal terms of the statute as well as its general objectives, and applying the Florida statute as it has been construed in the decided cases, this is a case where the insured should not be forced to bear the cost of litigation with its insurer which has terminated favorably to the insured.
 
 
 49
 So much of the judgment as awards a money recovery to the appellee, Greyhound Corporation, is affirmed; so much of the judgment as denies to the appellee and cross-appellant, Greyhound Corporation, a recovery of a reasonable sum as fees or compensation for its attorneys is reversed, and the cause will be remanded for a determination and award of attorneys' fees.
 
 
 50
 Affirmed in part and in part reversed and remanded.