**The COLONIAL BANK,
Plaintiff–Respondent,**

v.

**Walter L. RATICAN, Jr.,
Defendant–Appellant.**

**No. 57330.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 13, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 1991.

Application to Transfer Denied
May 3, 1991.

Robert E. Rapp, St. Louis, for defendant-appellant.

Peter W. Herzog, Jr., Eugene J. Brockland, Jr., Caruthers, Herzog, Crebs & McGhee, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a jury verdict and judgment pursuant thereto against him in the amount of $378,835.88 based upon his personal written guaranty of a loan by plaintiff to DATAR, Inc. We affirm.

DATAR was a company established by defendant Ratican in 1985 to provide computer services. Ratican sought a loan from Colonial Bank to finance the establishment of DATAR. Colonial required personal written guaranties of the debt from Ratican and another principal of DATAR. The other principal is not now involved in this litigation. Upon default of the loan and DATAR's demise, Colonial sued Ratican on the guaranty.

Ratican filed an answer containing a general denial on May 9, 1986, which did not contain a counterclaim. On March 31, 1988, Ratican filed a counterclaim and third-party petition without leave of court. These pleadings were based predominately upon certain investments made by Ratican in 1982 and thereafter. The rambling allegations attempt to allege that the investments involved were a confidence game in which earlier investors were paid "dividends" from the monies received from sub-

sequent investors—a Ponzi scheme. The counterclaim and third-party petition alleged that an officer of Colonial was engaged in this scheme and his conduct had caused Ratican to invest resulting in a loss of substantial money. It was further alleged that Ratican's execution of the guaranty was based upon representations to him by the bank officer that payments on the investment would be forthcoming making it possible for Ratican to meet the note payments.

Upon motion the trial court dismissed the counterclaim and third-party claim without prejudice and with leave to file an amended counterclaim pleading fraud in the inducement of the guaranty agreement. After the time granted for such pleading Ratican filed an amended counterclaim in all basic respects identical to the original counterclaim. Again the court sustained a motion to dismiss with leave to file a counterclaim based solely on fraud in the inducement. Another amended counterclaim was filed. That counterclaim was dismissed for failure to state a cause of action. At trial the court refused to allow evidence of the investment or any fraud connected with the guaranty agreement.

■ Ratican premises error upon the trial court's dismissal of his counterclaims and third-party petition. We address that contention as presenting three separate issues. The counterclaims must be divided into two distinct parts. The first deals with Ratican's investment in Midland Energy Co.—the alleged confidence scheme. Those occurred in 1982 fully three years before the organization of DATAR and no investments were made after DATAR was formed. That counterclaim did not arise out of the transaction or occurrence which was the subject matter of Colonial's claim. It bore no logical relationship to Colonial's claim under the guaranty agreement. It was therefore a permissive counterclaim. Rule 55.32(b); *State ex rel. Farmers Insurance Co., Inc. v. Murphy*, 518 S.W.2d 655 (Mo. banc 1975) [2, 3]. To the extent the counterclaim purported to allege fraud in the inducement or in the execution of the guaranty agreement it was a compulsory counterclaim (or probably more accurately an unpleaded affirmative defense). Rule 55.32(a), Rule 55.08.

■ Ratican did not file his counterclaim until long after he filed his answer. It was therefore not timely and required leave of court to be filed. Rule 55.25, Rule 55.32(e). The court's ruling on the first two counterclaims filed constituted a granting of leave to file the compulsory counterclaim and a denial of leave to file the permissive counterclaim. We can find no abuse of discretion in the trial court refusing to allow defendant to file a counterclaim injecting a new, complicated, and unrelated cause of action into a relatively simple lawsuit almost two years after initiation of the litigation. Defendant has not demonstrated any abuse of discretion.

■ The third-party petition sought recovery against the third parties for losses Ratican sustained from his investment in the Ponzi scheme. That recovery was totally unrelated to Ratican's liability on the guaranty agreement and any recovery by Ratican under that petition would bear no correlation or relationship to the recovery Colonial might effectuate under the guaranty agreement. The third-party defendants were not liable to Ratican "for all or part of plaintiff's claim against him." The third-party claim was therefore not proper. Rule 52.11(a). It was properly dismissed.

■ We turn to the compulsory counterclaim. While it again attempted to inject aspects of the permissive counterclaim, in essence it alleged that Colonial represented that Colonial would prepare the guaranty agreement to reflect that it would not look to Ratican personally for repayment but rather to collateral covered by the agreement and "that the corporate debt would be satisfied from payments that Walter L. Ratican, Jr., would receive and continue to receive on his investments in the coal venture scheme through The Colonial Bank" which would serve as "further collateral." Ratican further alleged that the note and guaranty were prepared contrary to the representations in that they "purport to give the Colonial Bank the claim of judgment ... on the guaranty

without first executing against the computer as collateral and the monies from the Midland Energy Company." If we assume that these allegations about what the bank "would" do, although alleged in the future tense, were in fact allegations of existing facts we are unable to find any sufficient allegation of reliance or right to rely. The guaranty agreement clearly contained none of these purportedly previously agreed to provisions. There is no allegation that the document signed by Ratican was in any way altered after his signature, that the contents of the guaranty agreement were in any way concealed from him, that any misrepresentations were made when he signed the agreement of the meaning of its contents, or that he was in any way precluded from examining the document before he signed it. In short, there are no allegations that the document which he actually signed was in any respect misrepresented to him. *See for example: Abbey v. Heins,* 546 S.W.2d 553 (Mo.App.1977), *Empire Bank v. Walnut Products, Inc.,* 752 S.W.2d 404 (Mo.App.1988); *Essex v. Getty Oil Company,* 661 S.W.2d 544 (Mo.App. 1983). The agreement specifically stated that the bank could enforce the guaranty "directly against Guarantor independently of and without proceeding against Borrower or foreclosing any collateral pledged to Bank; ..." It contained no provisions relating to investment income from Midwest. While there are allegations that the bank officer misrepresented to Ratican that Midwest was a viable entity and would be making future payments the operative facts upon which the counterclaim relied for recovery was the failure of the bank to include, within the guaranty, provisions for reliance on repayment solely on outside collateral. Averments of fraud must be pleaded with specificity. Rule 55.15. The allegation that Ratican's reliance "was reasonable under the circumstances then existing" does not meet the requirement of specificity. The compulsory counterclaim was properly dismissed.

Four of Ratican's seven remaining points deal with the court's refusal to allow evidence concerning the Midwest investment and his claims of fraud. Those issues were not pleaded either as an affirmative defense or as a proper counterclaim and were not a part of the case. The three remaining contentions of error we find without merit.

Judgment affirmed.

SATZ and CARL R. GAERTNER, JJ., concur.