Quinlock SHOBE, Respondent,

v.

Roxanne KELLY and Allstate Insurance Company, Appellants.

No. WD 68712.

Missouri Court of Appeals, Western District.

Feb. 3, 2009.

Application for Transfer to Supreme Court Denied March 31, 2009.

Curtis E. Woods, Kansas City, MO, for Appellants.

Tim E. Dollar, Kansas City, MO, Counsel, Edward D. Robertson, Jr., Mary D. Winter, Anthony L. Dewitt, Jefferson City, MO, Co–Counsels for Respondent.

Before: THOMAS H. NEWTON, C.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

THOMAS H. NEWTON, Chief Judge.

Allstate Insurance Company (Allstate) and Roxanne Kelly, an Allstate insurance adjuster, appeal from a denial of their motion for judgment notwithstanding the verdict (JNOV), or in the alternative for a new trial. The jury found for Quinlock Shobe, an Allstate insured, on her claim for bad faith failure to settle and awarded her actual and punitive damages. We reverse in part and affirm in part.

### Factual and Procedural Background

We give deference to the jury's role and state the facts most favorable to its verdict. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 64 n. 2 (Mo. banc 2000). Ms. Shobe had an auto insurance policy with Allstate. Because she worked as a personal care attendant for the elderly and sometimes drove her clients' vehicles, she had sought a policy providing liability coverage when she drove a client's car. Her Allstate policy provided liability coverage on "non-owned" vehicles. Ms. Shobe began having mechanical trouble with her Dodge van. In late December 1997, L.C. Harris offered to sell her a 1992 Aerostar van. Ms. Shobe gave Mr. Harris $500 as a down payment, and he allowed her to keep the van for a test drive.

Before she had finalized the transaction, Ms. Shobe called her Allstate agent, told

him she was considering buying the Aerostar, and inquired about the premium cost. The agent explained that there was a problem with the identification number on the paperwork and asked her for the VIN number, but Ms. Shobe could not locate it on the van. Ms. Shobe told the agent she would ask Mr. Harris to explain the discrepancy. While still trying to locate Mr. Harris, in January of 1998 Ms. Shobe had an accident while driving the Aerostar. The accident injured three pedestrians: Altha Lott and her two children (the Lotts).

Ms. Shobe reported the accident to Allstate. Ms. Kelly was assigned to the claim. She contacted Ms. Shobe and took a recorded statement. In the statement, Ms. Kelly did not tell Ms. Shobe that there were any concerns with coverage of the accident. In the beginning of March, Ms. Kelly sent a letter to a claimant stating, "We do not have coverage for this accident." At the end of March, Ms. Kelly noted in her claims activity log that she had contacted in-house counsel and advised she did not feel the accident should be covered. In April, Ms. Kelly sent a letter to counsel for Truman Medical Center stating that there was no coverage for the accident, but she was still investigating. In her subsequent deposition, Ms. Kelly admitted that she presumed Ms. Shobe had no coverage. She testified that she made a conclusive determination that there was no coverage prior to speaking with a lawyer. Ms. Kelly also admitted she did not consider Ms. Shobe's financial interests.

Subsequently, Ms. Kelly contacted an attorney whom Allstate used as outside counsel. She sent him the file, including her claim log with her findings on coverage. In May, outside counsel gave Allstate a letter opining that Ms. Shobe's accident was not covered by her policy. He promised a "more formal report" after an examination of Ms. Shobe under oath and noted that if Ms. Shobe did not cooperate, this would be "an additional basis for denial of coverage." No legal citations or references were included in the letter. In July, Ms. Kelly noted "[c]overage will remain denied." In October, after examining Ms. Shobe under oath without counsel, outside counsel gave Allstate a second letter stating his opinion that the accident was not covered. He noted that Ms. Shobe was a 53–year–old African–American woman who had lived in Kansas City all her life, had ten children, and worked as a nurse. This second opinion letter also included no legal citation or reference other than discussion of the policy.[1] In November, Allstate informed Ms. Shobe that it would not cover the accident.

The Lotts subsequently filed suit against Ms. Shobe for their injuries. In February of 1999, Allstate made a decision to defend the suit under a reservation of rights and to file an action for a declaratory judgment; it later retracted this decision. In June of 2000, the Lotts sent a letter offering to settle their claims for Ms. Shobe's policy limit of $50,000. The next day, Allstate's outside counsel replied to the Lotts that Allstate's policy did not cover the accident and Allstate would not settle the case. Allstate's counsel later testified that he gave no regard for Ms. Shobe's financial interests because "it was not a proper factor." Judgment was subsequently entered for the Lotts against Ms. Shobe for $138,339.20.

---

1. In the letter, counsel opined the accident was not covered because Ms. Shobe was not driving the vehicle listed on her declarations page, and he believed the Aerostar did not fit the policy definition of a "replacement auto, additional auto, substitute auto, or non-owned auto."

The Lotts filed an equitable garnishment action to collect the underlying $50,000 policy limit from Allstate. The circuit court found Ms. Shobe's liability for the accident was covered under her Allstate policy because the Aerostar was a "non-owned" vehicle. Allstate appealed. This court also held that Ms. Shobe's accident was covered under her Allstate policy. *Lott v. Allstate Ins. Co.*, 131 S.W.3d 439 (Mo.App. W.D.2004). Thereafter, Allstate paid the policy limit of $50,000 and accumulated interest to the Lotts. However, $124,341.03 was still owed on the Lotts' claim, with interest accumulating at nine percent.[2] Ms. Shobe became concerned about losing her home and having her wages garnished; she went to speak to a bankruptcy attorney. The bankruptcy attorney testified that Ms. Shobe did not understand the circumstances that led to the judgment, and he took her to see a plaintiff's attorney.

In 2005, Ms. Shobe filed suit against Allstate and Ms. Kelly, alleging a bad faith failure to settle in violation of their fiduciary duty to Ms. Shobe as an insured. At trial, Ms. Shobe offered an insurance claims adjuster as an expert witness. He stated that Ms. Kelly's claims diary showed a preconceived intent to deny coverage before fully investigating the claim. Making a "no coverage" decision before investigating the claim, he asserted, destroyed the relationship of trust and protection between an insured and an insurer. He further stated that there was no rational basis for Allstate's attorney to reference Ms. Shobe's race, gender, and the number of her children in his coverage opinion. He explained standard options for insurance companies where policy coverage was in doubt were to provide a defense under a reservation of rights or to file a declaratory judgment action. He testified further that Allstate's failure to consider Ms. Shobe's financial interests deviated significantly from industry standards.

A trial attorney who had represented insurers and insureds also testified as an expert witness for Ms. Shobe. He asserted that an insurer starts with a presumption of coverage and that there is a fiduciary relationship between an insurer and an insured. From his review of the files, the attorney asserted that Ms. Kelly made a determination of no coverage before she ever consulted with counsel, and then she communicated that conclusion to counsel. He did not believe there had been any reasonable basis for denying coverage to Ms. Shobe and that Ms. Kelly sought legal advice only to justify her preconceived opinion.

A mortgage banker, also testifying as an expert witness, explained that Ms. Shobe had perfect credit but that the judgment placed her in a subprime loan category and, paid or unpaid, would affect her credit history for ten years. Ms. Shobe's mortgage and auto loans were being charged interest at almost twice the market rate. He also testified to the effect of a judgment on insurance premiums and the ability to obtain insurance, as well as on the ability to obtain financing. Ms. Shobe then offered evidence that Allstate's net profit for 2006 was $4.9 billion and its net worth was $21.8 billion.

Allstate and Ms. Kelly did not offer rebuttal experts at trial. Allstate's outside counsel testified that his firm sought unsuccessfully to find Mr. Harris, thinking that his insurance on the Aerostar might provide coverage. He also testified that Allstate was a repeat client, that he was interested in keeping its business, and that Allstate liked to have advice of counsel documented so there would not be criti-

2. At trial the outstanding amount with interest was $160,338.86.

cism when a claim was paid. Ms. Kelly testified to her involvement in the case.

The jury found for Ms. Shobe on all claims and awarded $500,000 in actual damages and $500,000 in punitive damages. Allstate and Ms. Kelly moved for JNOV or, in the alternative, for a new trial. The motion was denied and this appeal followed.

## Standard of Review

Allstate and Ms. Kelly assert five points on appeal assigning error to the trial court's denial of their post-trial motion and entry of judgment on the jury's verdict. Whether Ms. Shobe made a submissible case is a question of law we review *de novo*. *Rinehart v. Shelter Gen. Ins. Co.*, 261 S.W.3d 583, 595 (Mo.App. W.D.2008). We accept the plaintiff's evidence as true, disregard the defendants' contradictory evidence, and draw all inferences in favor of the plaintiff's case. *Id.* We also review *de novo* whether evidence is substantial and whether inferences drawn from it are reasonable. *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 661–62 (Mo.App. W.D.2008). We reverse the jury's verdict for insufficient evidence only where there was a complete lack of probative fact to support its conclusion. *Id.* at 662.

## Legal Analysis

In their first point on appeal, Ms. Kelly and Allstate contend that no cause of action for the tort of bad faith failure to settle (BFFS) lies against an insurance claims adjuster. The parties acknowledge no case is dispositive on whether Missouri recognizes a cause of action against an insurance claims adjuster, as opposed to an insurance company, for the tort of BFFS. Ms. Kelly and Allstate assert that because the adjuster is not in privity of contract with the insured, there can be no

fiduciary duty implied in tort. Ms. Shobe contends that the fiduciary duty arises from the relationship of trust, not the contract.

The tort of BFFS was initially recognized by the Missouri Supreme Court in *Zumwalt v. Utilities Insurance Co.*, 360 Mo. 362, 228 S.W.2d 750 (1950). An insurer under a liability policy has a fiduciary duty to its insured to evaluate and negotiate third-party claims in good faith. *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13, 18 (Mo.App. W.D.1983). Where it wrongfully breaches this duty and refuses to settle within policy limits, the insurer may be held liable for resulting losses to the insured. *Id.* The tort presupposes that the tortfeasor is the insurer and has the power to settle the claim.

Our review of the record shows that to the extent Ms. Kelly had an opportunity to settle the claims through her employment with Allstate, she was acting as Allstate's agent, not as a principal. Ms. Kelly did not personally control the settlement, she did not have the individual capacity to settle the claims, nor did she represent that she had such capacity. Any settlement monies were not her funds; she was functioning solely as an agent of her employer. Thus, she cannot be held personally liable in this case. Point one is granted, and the order denying JNOV against Ms. Kelly is reversed.

### Bad Faith Failure to Settle

In its second point, Allstate argues that the tort of BFFS requires four discrete elements and that Ms. Shobe failed to satisfy two of them. At the trial level, Allstate made this same argument when objecting to the verdict director. The instruction premised Allstate's liability on a finding that Allstate: (1) had the opportunity to settle within policy limits, (2) acted

in bad faith through its refusal to do so, and (3) such failure caused damage to Ms. Shobe.

In responding to Allstate's objection, the trial court noted that the enumerated elements argued by Allstate appeared to emerge in *Dyer*, a first-party disability insurance case, which was factually distinct from Ms. Shobe's case. *See Dyer v. Gen. Am. Life Ins. Co.*, 541 S.W.2d 702, 705 (Mo.App.1976); *see also Duncan*, 665 S.W.2d at 19 (BFFS is not a cause of action in a first-party insurance case because there is no fiduciary relationship). After reviewing cases offered by the parties, the trial court found it was obligated to follow Missouri Supreme Court and Western District cases, which had not limited the tort to these four discrete elements.

In *Dyer*, while determining that BFFS did not apply to first-party claims, the court stated without citation:

> The elements of the tort *appear to be* that: (1) the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured; (2) the insured has demanded that the insurer settle the claim brought against the insured; (3) the insurer refuses to settle the claim within the liability limits of the policy; and (4) in so refusing, the insurer acts in bad faith, rather than negligently.

541 S.W.2d at 704 (emphasis added). Allstate argues that Ms. Shobe failed to show that it assumed control of the proceedings or that Ms. Shobe made a demand on Allstate to settle the claim.

What Allstate fails to recognize is that in this case, Allstate never provided a defense to Ms. Shobe, even under a reservation of rights. We cannot reward Allstate's refusal to provide a defense by insulating it from a BFFS claim.[3] Also, as to the demand that the insurer settle the claim, here Allstate had full knowledge of the Lotts' demand to settle within the policy limits. Allstate argues that it was entitled also to a demand letter from Ms. Shobe or her attorney, but Allstate had rejected all responsibility toward Ms. Shobe, informed her that it was providing no coverage for the accident, and thus was in no position to criticize her failure to reiterate the demand of which Allstate was already aware.

When our Supreme Court recognized BFFS, it found that the wrong committed was the insurer's intentional disregard of the duty it owed to its insured. *See Zumwalt*, 228 S.W.2d at 754. "The insurance company incurs liability exposure . . . when the company refuses to settle a claim within the policy limits and the insured is subjected to a judgment in excess of the policy limits as a result of the company's bad faith in disregarding the interests of its insured in hopes of escaping its responsibility under the liability policy." *Overcast*, 11 S.W.3d at 67–68. Whether an insurer acted in bad faith is determined in each case "upon its particular state of facts." *Zumwalt*, 228 S.W.2d at 754; *see Johnson*, 262 S.W.3d at 662 (discussing *Zumwalt* and listing circumstances which may show bad faith); *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 94 (Mo.App. W.D.2005) (the "obligation to act in good faith regarding settlement continues even if an insurer denies coverage and refuses to defend the insured").

---

3. Had Allstate defended under a reservation of rights, it would have preserved more opportunity to protect against a BFFS claim. The duty to defend is broader than the duty to indemnify. *Am. States Ins. Co. v. Herman C. Kempker Const. Co.*, 71 S.W.3d 232, 236 (Mo. App. W.D.2002).

The tort creates liability in order to compensate an insured where she has been wrongly subjected to an excess judgment, and to deter insurance companies from failing to fulfill fiduciary duties to their insureds. *See Truck Ins. Exch.,* 162 S.W.3d at 93. Allstate's position requires liability to be premised on procedural steps—the assumption of control of legal proceedings by the insurer, the making of a demand by the insured—which are not likely to occur where the insurer completely rejects its fiduciary duties. If an insurer wrongly denies coverage, denies even a defense under a reservation of rights, and then completely refuses to engage in settlement negotiations, it cannot avoid liability by its wrongful refusal to assume control of the proceedings. Similarly, if an insurer wrongly denies any responsibility for a claim, it cannot avoid liability because the insured fails to make a futile demand that the insurer provide funds for a settlement offer of which it is already aware. Given Allstate's blanket rejection of responsibility to its insured, we cannot find that the trial court erred in denying Allstate's post-trial motions on this issue. Consequently, Allstate's second point is denied.

### Showing of Bad Faith

In its third point, Allstate asserts that bad faith was not proven by sufficient and substantial evidence because, it argues, it acted in good faith by performing an adequate investigation and seeking outside legal opinion. Even if its actions were in error, it contends, it was at most negligent.

An insurer's bad faith is a state of mind. *Johnson,* 262 S.W.3d at 662. The jury may find bad faith on direct evidence, or it may infer bad faith from circumstantial evidence. *Rinehart,* 261 S.W.3d at 595. Examples of bad faith include: failing to fully investigate a third-party claimant's injuries or recognize their severity, ignoring that a verdict could exceed policy limits, refusing to consider a settlement offer, and not keeping an insured informed of settlement offers or the risks of an excess judgment. *Johnson,* 262 S.W.3d at 662. Limiting an investigation to the question of coverage, then standing on a denial without considering the interests of an insured also shows bad faith. *Landie v. Century Indem. Co.,* 390 S.W.2d 558, 566 (Mo.App.1965).

Ms. Shobe offered evidence for the jury to infer that Allstate: (1) concluded that Ms. Shobe had no coverage before investigating, while at the same time Ms. Kelly admitted knowing of cases requiring coverage on similar facts, as well as admitted that she started with a presumption of no coverage and that for the insurer do so is to act in bad faith; (2) denied coverage to persons injured in the accident before full investigation; (3) accepted legal conclusions from outside counsel that Ms. Shobe had no coverage without legal citation or reference; (4) ignored Ms. Shobe's financial interests and made no inquiry as to the extent of the plaintiffs' injuries or the risk Ms. Shobe would be subjected to if a suit were carried forward; and (5) rejected a settlement offer within policy limits without consulting Ms. Shobe or considering the damage to her interests—even while considering defending under a reservation of rights, thus implying that coverage was in doubt. The jury also heard evidence that where an insurer has a good faith question as to its obligations, seeking a declaratory judgment is an "adequate remedy." *See id.* at 567. From these facts, the jury could conclude that Allstate acted in bad faith by seeking to avoid payment of the policy rather than honoring its duty to its insured.

Allstate correctly asserts that bad faith requires more than an erroneous denial of

coverage. At trial, Allstate argued that it made a mistake, only an error in opinion, where reasonable minds could differ. "Of course if that was their honest opinion, then that would be a good defense," our Supreme Court wrote in *Zumwalt*, "but that would be a question for the jury." 228 S.W.2d at 754. Consequently, Allstate's third point is denied.

### Actual Damages Award

In its fourth point on appeal, Allstate argues that the trial court erred in denying its post-trial motion because the actual damages awarded by the jury were excessive.[4] It asserts that the damages on a BFFS claim are limited to the amount an insured was forced to pay on the unsettled claim. Second, while Allstate concedes that the unsatisfied amount of the excess judgment—approximately $160,000[5]—as well as Ms. Shobe's attorney fees in the underlying case with the Lotts—$1,500— were both recoverable and proven with sufficient evidence, it contends that the actual damages award of $500,000 was excessive because it goes beyond these amounts and was not supported by substantial evidence.

We do not agree with Allstate that damages for BFFS are limited to the amount due on the unsettled third-party claim. No case cited by Allstate states such a rule. BFFS is a tort action based on the insurer's failure to protect the interests of its insured, not an action on the insurance contract. *See Overcast*, 11 S.W.3d at 67. In tort, the insurer is liable for the damages proximately caused by its bad faith. *Landie*, 390 S.W.2d at 565–66. The insured is entitled to be made whole and damages should "put the insured into the same position as if the company had

performed its obligations under the policy." *Truck Ins. Exch.*, 162 S.W.3d at 93.

Second, the assessment of damages is in the province of the jury. *Knifong v. Caterpillar, Inc.*, 199 S.W.3d 922, 927 (Mo.App. W.D.2006). We interfere only if "the verdict is so grossly excessive that it shocks the conscience." *Harrell v. Cochran*, 233 S.W.3d 254, 258 (Mo. App. W.D.2007) (internal quotation marks and citation omitted). Thus, our interference is "with hesitation and only when the verdict is manifestly unjust." *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 395 (Mo.App. W.D.2004). Each case is considered on its own facts. *Id.* at 395. Considerations may include pecuniary losses, the nature and extent of a plaintiff's injuries, awards in comparable cases, the jury and trial court's superior opportunity to evaluate damages, and intangibles that do not lend themselves to easy calculation. *Id.* Here, given the ten years of litigation Ms. Shobe has undergone; her fears of bankruptcy; her economic losses in credit, interest rates, and insurance; as well as other "intangibles" not easily calculated, we do not find that the jury's award was manifestly unjust. As a result, Allstate's fourth point is denied.

### Punitive Damages Award

In its final point, Allstate contests the jury's award of punitive damages, asserting that Ms. Shobe failed to make the required showing. A punitive damages award requires more than the showing for bad faith. *Zumwalt*, 228 S.W.2d at 756. The plaintiff must present "clear and convincing evidence that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Rinehart*, 261 S.W.3d at 596–97. Clear and

---

4. Appellants did not seek remittitur at the trial court.

5. This amount continues to accrue interest at the rate of nine percent.

convincing evidence establishes the character of the defendant's actions to a "high probability." *Id.* at 597.

■■■■ We find that the evidence Ms. Shobe offered to show Allstate's bad faith was also sufficient to carry this higher burden for punitive damages. Punitive damages are justified where the evidence supports an inference that the insurer acted with reckless indifference to the interests of its insured. *Johnson,* 262 S.W.3d at 666. Ms. Kelly testified that Allstate did not consider Ms. Shobe's interests as its insured; it was irrelevant to the company's coverage decision. Ms. Shobe also offered evidence that the "no coverage decision" was made before investigation, confirmed without adequate investigation, and was made contrary to existing law—leaving Ms. Shobe wrongly exposed to a judgment far in excess of her policy limits. These facts were sufficient for the jury to infer reckless indifference. *See id.*

In addition, Ms. Shobe offered evidence of Allstate's correspondence about her age, race, the number of her children, and her occupation. At trial, Ms. Shobe asked the jury to infer that Allstate denied coverage because it presumed she did not have the resources to challenge its decision. In closing, plaintiff's counsel argued:

> And about [Allstate's attorney], who remember, is not writing his coverage letter for Ms. Kelly; he's writing his letter for the bigwigs at Allstate.... And he says he's just describing Ms. Shobe, and she's a 50– or 60–year–old woman and she has ten children and he tells about her race and she says, she says that she's working as a CNA.

> What is he telling Allstate? What is he telling people in the management? It's Allstate code for she won't have the resources to fight the denial. That's what that was about.

The jury had a basis to find that Allstate acted with reckless indifference to Ms. Shobe's interests as its insured. We see no reason to disturb its verdict. Allstate's fifth point is denied.

### Conclusion

We reverse the portion of the trial court's order denying JNOV for Ms. Kelly and otherwise affirm the decision.

JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ., concur.