Karen King Mitchell, Chief Judge
Big A LLC (Big A) appeals the denial of its motion for judgment notwithstanding the verdict following a jury trial and judgment in favor of Paul Vogel. Big A contends that the trial court erred in denying its motion because Vogel failed to make a submissible case on his affirmative defense of fraudulent inducement. Big A asserts that, as the guarantor who accepted primary liability for the debt of another, Vogel can reasonably rely on representations pertaining only to the nature of his obligations as guarantor; he cannot avoid his obligations by alleging fraudulent inducement based on representations about the condition and value of the collateral securing the debt where such representations were not included in the guaranties. Because we find that Vogel made a submissible case on the affirmative defense of fraudulent inducement, we affirm the trial court's denial of Big A's motion for judgment notwithstanding the verdict.
Background[1]
This case has a long and complicated factual and procedural history. For purposes of this appeal, which involves a fairly narrow legal issue, we include only those facts necessary for a full understanding and evaluation of that issue.
In June 2010, Shaun Hayes, an officer and director of Excel Bank (Bank), contacted Vogel about an investment opportunity. Vogel had done business with Bank in the past and trusted Bank's officers, especially Hayes. Vogel, Hayes, and another bank officer, Timothy Murphy, met in early June to discuss the deal.
At the meeting, Hayes told Vogel that Bank had made certain loans to Eighteen Investments, Inc. (Eighteen) that Bank wanted to get off its books for regulatory reasons. The loans were evidenced by promissory notes (the Eighteen promissory notes) and were secured by real estate in Arizona. Hayes told Vogel that Bank would sell the notes to Vogel for an amount less than the note balances and that the value of the Arizona real estate exceeded the balance due on the notes. Hayes also told Vogel that a property manager was managing the Arizona real estate, that the rental income would more than service the debt, and that the rental payments were being made to Bank.
Hayes failed to tell Vogel that Bank had purchased the Eighteen promissory notes for $0.51 on the dollar from National City Bank several months earlier and had immediately *31 divided the notes into three pools and sold them off. Hayes also failed to tell Vogel that any amounts he would borrow would be credited to the owners of the pools. This information would have been useful to Vogel in evaluating whether to proceed.
Based on Hayes's representations during their meeting, Vogel decided to proceed with the transaction but structure the deal to benefit his children. A few days after the meeting, Vogel provided a copy of his personal financial statement to Murphy at Hayes's request, and Vogel established Lindworth Family Trust (Trust) and Lindworth Investments, LLC (Lindworth) for purposes of entering into the deal. Lindworth was owned by the Trust and family friend Donald Sallee served as trustee; Vogel was not in charge of either entity at the time. Lindworth was to be both the borrower and the purchaser of the Eighteen promissory notes from Bank. Bank required Vogel to sign personal guaranties for the notes, which he agreed to do. Murphy agreed to keep Vogel apprised of all information about the deal.
Bank ordered appraisals on the Arizona properties and obtained property valuation reports for them from the Maricopa County, Arizona, Assessor's Office.[2] Before closing, Vogel asked Murphy to provide copies of any appraisals, but no one at Bank provided them to Vogel. And, Vogel was not informed that Bank possessed property valuation reports from the county. The appraisals and valuations showed that, contrary to Hayes's representations, the value of the Arizona properties was less than the loan amount. Vogel would not have agreed to the deal if he had been given the appraisals or valuation reports before closing. At no point before closing did Hayes or Murphy correct any of the misrepresentations Hayes made during the early June meeting with Vogel. Nor did Bank inform Vogel that rental income from the Arizona properties was not being paid to Bank or that the amounts Lindworth was going to borrow, and that he was personally going to guaranty, were going to be credited to the accounts of the pool borrowers. That information would have been important to Vogel in deciding whether to proceed with the deal.
On June 29, 2010, Sallee, the trustee acting on behalf of Lindworth, executed thirteen promissory notes (the Lindworth promissory notes) borrowing money from Bank with which Lindworth either purchased the Eighteen promissory notes from Bank or purchased the real properties from Eighteen (the pleadings in the record indicate both scenarios in different places, and the exact sequence of transactions is unclear).[3] Vogel executed thirteen guaranties, one for each Lindworth *32 promissory note.[4] As guarantor, Vogel "absolutely and unconditionally guarantee[d] to Lender [Bank] the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described [therein]." Vogel "guarantee[d] to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower [Lindworth] may now or at any time hereafter owe to Lender."
The guaranties signed by Vogel contain the following provisions relevant to this appeal:
1. No act or thing need occur to establish the liability of the Undersigned [Vogel] hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.
...
6. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): ... (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; ... (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; ....
7. The Undersigned waives any and all defenses, claims and discharges of Borrower [Lindworth], or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of ... fraud ... which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction.
...
11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.
Thus, according to the terms of the guaranties, Bank could hold Vogel liable regardless of what happened to the collateral properties (paragraph 6), Vogel waived *33 any defenses available to Lindworth (including fraud) (paragraph 7), and Bank could collect from Vogel without first seeking payment from Lindworth (paragraph 11).
In September 2010, Bank notified Vogel that no payments on the Lindworth promissory notes had been made and Vogel, as guarantor, needed to make payments. Vogel learned for the first time that no property manager was handling the Arizona properties and no rent was being collected and forwarded to Bank. Vogel hired a property manager to visit the Arizona properties and locate the tenants. The manager reported that many of the properties were vacant and in disrepair, and he made recommendations for what it would take to make the properties rentable. From the manager's report, it was clear that the rental income was not sufficient to service the debt on the Lindworth notes and the balance due on the Lindworth notes far exceeded the value of the Arizona properties. Bank demanded payment from Vogel under the guaranties, but Vogel refused.
Bank subsequently sold the Lindworth promissory notes to Big A,[5] which then sued Lindworth and Vogel, seeking the balance due on the unpaid notes plus interest, late fees, collection costs, court costs, and attorneys' fees. Lindworth and Vogel admitted executing and guarantying, respectively, the Lindworth promissory notes. Big A filed a motion for summary judgment. In response, Vogel requested and received leave to file affirmative defenses, including fraudulent inducement. The trial court passed Big A's initial motion for summary judgment, and Big A filed a second motion for summary judgment to address Vogel's affirmative defenses. The trial court then granted Big A's summary judgment motions. In so doing, the trial court found that Vogel's affirmative defenses were precluded by the statute of frauds provisions in § 432.040.[6] The trial court entered judgment for Big A in the amount of $369,309.88 with interest accruing from the date of the judgment (February 21, 2014) at a rate of nine percent per annum.
Lindworth and Vogel appealed the trial court's summary judgment as to only their affirmative defense of fraudulent inducement. This court reversed the summary judgment because § 432.040 applies to only actions and not defenses. Big A LLC v. Lindworth Invs., LLC , 458 S.W.3d 340, 344 (Mo. App. W.D. 2014). On remand, the parties stipulated that Big A had established its case-in-chief and that the amount of damages mirrored the original summary judgment award. Because the only issue at trial was Vogel's affirmative defense of fraudulent inducement, the court conducted the trial as though Vogel were the plaintiff and Big A the defendant.[7]
At trial, Vogel submitted the affirmative defense of fraudulent inducement based on the following misrepresentations: (1) the collateral properties in Arizona were generating rental income, which was being paid directly to Bank, in amounts sufficient to fully service Lindworth's debt (Jury Instruction No. 7); (2) the collateral properties had a collective fair market value in excess of the total amount to be loaned to *34 Lindworth (Instruction No. 11); and (3) the promissory notes to be sold to Lindworth were loans which Bank had previously made directly to Eighteen (Instruction No. 13). Vogel also submitted the affirmative defense of fraudulent inducement based on the following non-disclosures: (1) the Eighteen promissory notes that Lindworth was purchasing had previously been bought by Bank from National City Bank (Instruction No. 9); (2) Bank had previously sold the Eighteen promissory notes to pool borrowers (Instruction No. 15); (3) the amounts of the loans to be made to Lindworth would be credited to the accounts of the pool borrowers as to the loans Bank had previously extended to those entities (Instruction No. 17); (4) any rental income generated by the collateral properties was not being credited to the accounts of the pool borrowers (Instruction No. 27); and (5) Bank had obtained appraisals as to the value of the collateral properties (Instruction No. 21). Vogel testified that the prior ownership history of the notes Lindworth was purchasing was important because it raised a question as to why the notes were being sold again. Big A did not offer evidence contradicting Vogel's testimony about Hayes's misrepresentations.
Big A moved for directed verdict at the close of Vogel's evidence and renewed the motion at the close of all the evidence; the trial court denied both motions. At Vogel's request, the trial court submitted to the jury eight separate verdict-directing instructions, one for each alleged fraudulent misrepresentation and non-disclosure. The jury returned verdicts in Vogel's favor on all eight submissions, and the trial court entered its judgment accordingly. Big A filed a timely motion for judgment notwithstanding the verdict, which the trial court denied. This appeal follows.
Standard of Review
"When reviewing a circuit court's overruling of a motion for judgment notwithstanding the verdict, [courts] 'must determine whether the [defendant] presented a submissible case by offering evidence to support every element necessary [for the affirmative defense].' " Newsome v. Kansas City, Mo. Sch. Dist. , 520 S.W.3d 769, 775 (Mo. banc 2017) (quoting Fleshner v. Pepose Vision Inst., P.C. , 304 S.W.3d 81, 95 (Mo. banc 2010) ). "Whether the [defendant] made a submissible case is a question of law that [courts] review[ ] de novo. " Id. (quoting Ellison v. Fry , 437 S.W.3d 762, 768 (Mo. banc 2014) ). "We accept the [defendant's] evidence as true, disregard the [plaintiff's] contradictory evidence, and draw all inferences in favor of the [defendant's affirmative defense]." Wade v. Clarion Mortg. Capital, Inc. , 311 S.W.3d 373, 376 (Mo. App. W.D. 2010) (quoting Shobe v. Kelly , 279 S.W.3d 203, 209 (Mo. App. W.D. 2009) ). "We also review de novo whether the evidence presented was substantial and whether the inferences drawn from the evidence were reasonable to support the jury's verdict." Id. at 376-77. "A jury's verdict is reversed for insufficient evidence 'only where there was a complete lack of probative fact to support its conclusion.' " Id. at 377 (quoting Shobe , 279 S.W.3d at 209 ).
Analysis
In its only point on appeal, Big A asserts that the trial court erred in denying its motion for judgment notwithstanding the verdict because Vogel failed to make a submissible case on his affirmative defense of fraudulent inducement. Big A argues that, as the guarantor who accepted primary liability for Lindworth's debt, Vogel can reasonably rely on only representations that go to the nature of his obligation under the guaranties; he cannot *35 rely on representations not included in the guaranties concerning the condition and value of the collateral properties securing the debt. Big A asserts that, as guarantor, Vogel accepted primary liability for Lindworth's debt regardless of the condition or disposition of the collateral properties and regardless of any attempt to enforce the debt against Lindworth. Big A argues that Vogel never alleged or submitted to the jury any fraudulent misrepresentation concerning his obligations under the guaranties but, instead, alleged fraud as to the representations about the condition and value of the collateral properties, among other things, which were not representations made to Vogel as the guarantor.
To make a submissible case for fraudulent inducement, Vogel needed to present substantial evidence from which the jury could have reasonably found that: (1) Hayes made a false, material representation; (2) Hayes knew the representation was false or he was ignorant of its truth; (3) Hayes intended that Vogel act on the representation in a manner reasonably contemplated; (4) Vogel was ignorant of the falsity of the representation; (5) Vogel relied on the representation's truth; (6) Vogel's reliance was reasonable; and (7) Vogel's reliance on the representation caused injury. Wade , 311 S.W.3d at 377. Silence can amount to a representation when an agent of the creditor has a duty to speak. Hess v. Chase Manhattan Bank , 220 S.W.3d 758, 765 (Mo. banc 2007).
We begin our analysis with Big A's claim that, in paragraph 7 of the guaranties, Vogel waived any and all claims of fraud against Bank-"the Undersigned will not assert, plead or enforce against Lender any defense of ... fraud ... which may be available to Borrower or any other person liable in respect of Indebtedness"-because, if true, that would end our inquiry. However, "Missouri law ... holds that a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract." Id. at 767 (quoting Lollar v. A.O. Smith Harvestore Prods., Inc. , 795 S.W.2d 441, 448 (Mo. App. W.D. 1990) ). Thus, Big A's claim that Vogel waived all fraud claims against Bank lacks merit.
Next, while we agree with Big A that a guaranty is an independent contract for another's undertaking and imposes responsibilities different from those imposed in the underlying debt agreement, Dunn Indus. Group, Inc. v. City of Sugar Creek , 112 S.W.3d 421, 434 (Mo. banc 2003), "[a] guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties." Midland Prop. Partners, LLC v. Watkins , 416 S.W.3d 805, 812 (Mo. App. W.D. 2013) (quoting Dunn , 112 S.W.3d at 434 ). "In fact, 'when several instruments relating to the same subject are executed at the same time, ... the documents will be construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend.' " Id. (quoting Johnson ex rel. Johnson v. JF Enters., LLC , 400 S.W.3d 763, 767 (Mo. banc 2013) ). "Such is true even when the instruments are 'not part of a single contract.' " Id. (quoting Johnson , 400 S.W.3d at 767 ).
Construing the promissory notes and guaranties together, there was sufficient evidence on which a reasonable jury could conclude that, in executing the guaranties, Vogel reasonably relied on Hayes's representations about the state and value of the collateral and repayment of the loan. There was evidence that Vogel would not have executed the guaranties, contemporaneous with, and for the benefit of, Lindworth because Lindworth would not have *36 executed the underlying notes in the absence of those representations.
In this case, construing the promissory notes and guaranties together is particularly appropriate because Hayes sought Vogel out and encouraged him to participate in the transaction, and Vogel created Lindworth and the Trust in response to those representations. At the meeting in early June when Hayes made the representations on which Vogel bases his affirmative defense, Lindworth did not exist. Hayes pitched the deal directly to Vogel and asked Vogel to provide his personal financial statement, which suggests that the parties' intent at the time was for Vogel to be the borrower in the transaction. Vogel's subsequent decision to establish Lindworth and the Trust for estate planning purposes should not shield Hayes or Bank from the legal consequences of their misrepresentations. Missouri law clearly provides that a borrower can sue a lender for fraudulent inducement or can defend an action, brought by the lender against the borrower, for the same reason. See, e.g., Hamilton v. Massengale , 481 S.W.3d 128, 134 (Mo. App. S.D. 2016) ; Wade , 311 S.W.3d at 378.
In reviewing the trial court's denial of Big A's motion for judgment notwithstanding the verdict, our role is to determine whether Vogel made a submissible case by offering evidence to support his affirmative defense of fraudulent inducement. Newsome , 520 S.W.3d at 775. In doing so, we accept Vogel's evidence as true, disregard Big A's contradictory evidence, and draw all inferences in Vogel's favor. Wade , 311 S.W.3d at 376. We will reverse the jury's verdict for insufficient evidence "only where there was a complete lack of probative fact to support its conclusion." Id. at 377 (quoting Shobe , 279 S.W.3d at 209 ).
On the record before us, we conclude that Vogel made a submissible case on his affirmative defense of fraudulent inducement. Vogel provided detailed testimony about his meeting in early June 2010 with Hayes and Murphy and his subsequent discovery of their fraud. He also provided documents showing that the Arizona properties used to secure the debt purchased by Lindworth and guaranteed by Vogel were worth less than previously represented to him and that none of the rental income from those properties was being paid to Bank to service Lindworth's debt.
On appeal, Big A relies primarily on the Missouri Supreme Court's decision in ITT Commercial Financial Corporation v. Mid-America Marine Supply Corporation , 854 S.W.2d 371 (Mo. banc 1993). In that case, Scott Evert (and others) signed three guaranties for the debt of Mid-America Marine Supply Corporation (Mid-America) to ITT Commercial Finance Corporation (ITT) and Mercantile Bank of St. Louis, N.A. (Mercantile). Id. at 375, 388. As part of his guaranties, Evert agreed that he would be primarily liable for the debt of Mid-America and that neither ITT nor Mercantile would be required to pursue Mid-America's collateral before enforcing the guaranties. Id. at 385. The guaranties further provided that ITT and Mercantile "could release, abandon, or otherwise dispose of any collateral without releasing Evert." Id. Mid-America defaulted on its loans, so ITT and Mercantile sued Evert based on his guaranties. Id. at 375. Evert asserted an affirmative defense of fraudulent inducement. Id. ITT and Mercantile moved for summary judgment, which the court granted, and Evert appealed. Id.
With respect to which representations Evert could rely on to avoid liability under the guaranties, the Court stated,
The heart of a contract for guaranty is that the signor has agreed to be liable principally for another's debt. Where a *37 guarantor seeks to avoid liability due to representations of the guarantee, those representations must go to the nature of the guarantor's obligation under the guaranty in order to make reliance reasonable; representations concerning the debtor's obligation, and the strength or weakness of the creditor's position, are insufficient.
Id. at 386.[8] Evert admitted that neither ITT nor Mercantile ever told him they would not pursue him under his guaranties; he merely alleged that they said the creditors were "fully protected" and would "make sure all the collateral was secure and the payments were made." Id. In determining that Evert could not reasonably rely on either of these representations, the Court found that the first representation was immaterial in the face of the clear language of the guaranties and the second representation was "merely an expression of a present intent to influence future actions of someone not within the control of the plaintiffs." Id. The Court concluded that "representations that go solely to the debtor's obligation and the creditor's secured position cannot be reasonably relied upon by a guarantor in the face of the unambiguous language of his contract by which he assumed primary liability."[9] Id. at 387. Thus, the Court held that, in the face of the unambiguous terms of his guaranties, Evert could not reasonably rely on representations by ITT and Mercantile concerning the value or management of the collateral or Mid-America's payment of the underlying debt. Id. However, the Court found that Evert could reasonably rely on ITT's representation that Evert would have "no risk" under the guaranty because such a representation could support an inference that Evert would not be required to honor the terms of the guaranty.[10] Id.
*38 Based on ITT Commercial , Big A argues that the unambiguous language of Vogel's guaranties makes clear that he accepted primary liability for Lindworth's debt. Vogel agreed to be responsible for the debt even if Bank released Lindworth from liability or Bank released, modified, wasted, or lost the collateral. Vogel also agreed that Bank would not be required to pursue repayment from Lindworth or take any action with respect to the collateral before enforcing the guaranties. Because Vogel unambiguously accepted liability without regard to the condition of the collateral, Big A asserts that he cannot now rely on representations about the collateral. According to Big A, Vogel can rely on representations concerning only his obligations under the guaranties, and he failed to allege or submit to the jury a claim of fraudulent inducement with respect to any such representation.
We are not persuaded that ITT Commercial requires us to find that Vogel failed to make a submissible case on his affirmative defense of fraudulent inducement because ITT Commercial is distinguishable from the present case in several respects. First, the representations at issue in the two cases are fundamentally different. Where Evert argued that he could reasonably rely on vague representations that ITT and Mercantile were "fully protected" and would "make sure all the collateral was secure and the payments were made," Vogel submitted evidence of more specific representations, including that the collateral properties in Arizona were generating rental income, which was being paid directly to Bank, in amounts sufficient to fully service Lindworth's debt and that the collateral properties had a collective fair market value in excess of the total amount of the debt. Also unlike the representations made to Evert, which the Court deemed "merely an expression of a present intent to influence future actions of someone not within the plaintiffs' control[,]" representations to Vogel pertained to then-existing circumstances and events within Hayes's knowledge and control.
Second, Evert, unlike Vogel, did not aver that the representations on which he relied were false when made or when, if ever, they became false. ITT Commercial , 854 S.W.2d at 387. For some of the representations made in the present case (e.g. , that Bank had made the initial loans to Eighteen and that rental payments were being made to Bank), Vogel submitted evidence that Hayes knew the representations were false at the time he made them. For other representations (e.g. , the value of the collateral and the existence of a *39 property manager), Vogel submitted evidence that Hayes had to know the representations were false when Bank received the valuation reports, if not before, which occurred before closing.
Third, the representations at issue in ITT Commercial were allegedly made to Evert, whose sole role in the transaction was as guarantor. In contrast, when the representations in the present case were made to Vogel, the parties anticipated that Vogel would be the borrower, making it all the more reasonable for Vogel to rely on those representations in deciding to proceed with the transaction.
Finally, Evert's affirmative defense of fraudulent inducement was limited to his May 20, 1987 guaranty in favor of ITT. Id. at 388. And, with regard to that guaranty, Evert alleged that ITT represented to him that he had "no risk" under the guaranty. Id. at 387. The Court concluded that "[t]his representation, if made, could form the basis for reasonable reliance." Id. The Court found that the statement "present[ed] a jury question as to whether it was false at the time it was made, known to be false, made with the intent to deceive, and reasonably relied upon by Evert." Id. Thus, on the record before it, the Court concluded that summary judgment in favor of ITT on the basis of the May 20, 1987 guaranty was improper.[11] Id. The representations made to Vogel to the effect that the collateral properties were generating rental income, which was being paid directly to Bank, in amounts sufficient to fully service Lindworth's debt were essentially assurances that he would have no risk under the guaranties.
For all of these reasons, we find Big A's reliance on ITT Commercial misplaced. Point I is denied.
Conclusion
Because Vogel made a submissible case on his affirmative defense of fraudulent inducement, the trial court did not err in denying Big A's motion for judgment notwithstanding the verdict, and we affirm the trial court's denial of Big A's motion.
Cynthia L. Martin, Judge, and Janette Rodecap, Special Judge, concur.

When reviewing the denial of a motion for judgment notwithstanding the verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict. Fleshner v. Pepose Vision Inst., P.C. , 304 S.W.3d 81, 95 (Mo. banc 2010).

Big A did not file the appraisals or valuation reports as part of the record on appeal. "As the appellant, it was [Big A's] responsibility to supply us with the record on appeal, which should contain 'all of the record, proceedings, and evidence necessary to the determination of all questions to be presented, by either appellant or respondent.' " Interest of K.R.T. , 505 S.W.3d 864, 867 n.8 (Mo. App. W.D. 2016) (quoting Developers Sur. & Indem. Co. v. Woods of Somerset, LLC , 455 S.W.3d 487, 493 (Mo. App. W.D. 2015) ). "Where necessary materials are omitted from the record on appeal, the appellate court will assume that the omitted items were unfavorable to the appellant and favorable to the respondent." Id. (quoting Developers , 455 S.W.3d at 493 ). Here, we assume the appraisals and valuation reports are favorable to Vogel, an assumption Big A does not challenge.

Facts not otherwise attributed to a source are taken from this court's opinion in Big A LLC v. Lindworth Invs., LLC , 458 S.W.3d 340, 341-42 (Mo. App. W.D. 2014) issued at an earlier stage of this litigation.

Each guaranty contained the same language and varied only in the identity of the specific promissory note that was guaranteed. Big A included the Lindworth promissory notes and Vogel guaranties in the Legal File.

Although the parties stipulated that Big A is the current holder of the Lindworth notes, Big A does not claim to be a holder in due course. Therefore, Big A concedes that it is subject to any defenses that Lindworth and Vogel could assert against Bank. Big A , 458 S.W.3d at 341 n.3.

All statutory references are to the Revised Statutes of Missouri, Cum. Supp. 2010.

Before trial, Big A dismissed its claims against Lindworth without prejudice.

The Court also noted Evert was "an experienced businessman and no stranger to contracts of guaranty." ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 386 (Mo. banc 1993). While the same could be said of Vogel, who holds a master's degree in accounting, a law degree, and a master's of law degree in taxation and is a certified public accountant and licensed attorney, that does not affect which misrepresentations may support Vogel's affirmative defense of fraudulent inducement.

The Eastern District of this court applied this reasoning in Bohac v. Walsh , 223 S.W.3d 858, 863 (Mo. App. E.D. 2007), finding a petition filed by a guarantor failed to state a claim for fraudulent misrepresentation where a defendant had represented to the guarantor that her husband would go to jail for defaulting on loans if she did not sign the guaranty. Although the alleged misrepresentation in Bohac is distinguishable from the alleged misrepresentations in this case insofar as Bohac did not allege that the representation was false or that the speaker knew it was false and the representation was a prediction about a future action that may or may not be taken by an independent third party (the criminal justice system), id. , the Bohac court concluded that, even if the guarantor had otherwise stated a claim for fraudulent misrepresentation, she could not reasonably rely on the representation because it did not go to the nature of her obligations under the guaranty-to be principally liable for another's debt. Id. at 863-64 (citing ITT Commercial ). In the present case, the representations, including the representation regarding the use of the rental payments to cover the loan payments due to the bank, went to the heart of the transaction and the nature of Vogel's obligations as guarantor.

ITT Commercial cites Colonial Bank v. Ratican , 806 S.W.2d 460 (Mo. App. E.D. 1991), which similarly addressed representations on which a guarantor may reasonably rely to avoid liability under a guaranty. In Colonial Bank , a bank officer represented to the guarantor that payments on other investments involving the officer would be forthcoming, making it possible for him to meet the note payments. Id. at 462. However, the actual guaranty contained no provisions relating to use of the investment income. Id. at 463. The court upheld dismissal of the guarantor's counterclaim for fraudulent inducement, explaining that
[t]he guaranty agreement clearly contained none of these purportedly previously agreed to provisions. There is no allegation that the document signed by Ratican [the guarantor] was in any way altered after his signature, that the contents of the guaranty agreement were in any way concealed from him, that any misrepresentations were made when he signed the agreement of the meaning of its contents, or that he was in any way precluded from examining the document before he signed it. In short, there are no allegations that the document which he actually signed was in any respect misrepresented to him.
Id. at 463. We also find Colonial Bank distinguishable because, there, the gist of guarantor's argument was that the bank failed to include in the guaranty any language about use of the investment income, yet the guarantor signed the guaranty and, therefore, could not reasonably rely on the representation. Id. In the present case, nothing in the guaranties signed by Vogel or the contemporaneously executed Lindworth promissory notes contradicted Hayes's representations regarding the value of the collateral or the use of the rental payments therefrom. In other words, on their face, the guaranties and notes did not contradict Hayes's representations to the extent that any reliance on them could be deemed unreasonable.

However, the Court found that summary judgment in favor of ITT was proper on another, identical guaranty to ITT signed on January 28, 1986, to which Evert's affirmative defense of fraudulent inducement did not apply. ITT Commercial , 854 S.W.2d at 388-89.